## BARFIELD *v.* BIRRICK.

1. The issue in ejectment, or in statutory complaint for land, arising upon the declaration and plea of not guilty, is, did the plaintiff at the date suit was commenced have a legal title to the premises, or to any estate or interest in them, or any part thereof, coupled with the then present right of entry as against the defendant? Nevertheless, where

it appears that the plaintiff and the defendant are coterminous owners and that both derive title from a common grantor, it is not erroneous for the court to instruct the jury that the question resolves itself into one of boundary, and to fail to instruct them that the plaintiff in order to recover must show title in himself to the premises.

2. An unascertained or disputed boundary line between coterminous proprietors may be established by parol agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed. The failure of the court to instruct the jury that the line must be unascertained or disputed is not error requiring the grant of a new trial, where, as in this case, the evidence shows unequivocally that the boundary line between the coterminous proprietors was in fact unascertained.

3. The alleged newly discovered evidence is not of such character as would likely produce a different result on another trial. The evidence authorized the verdict.

No. 2183.　June 17, 1921.

Complaint for land. Before Judge Mathews. Bibb superior court. June 28, 1920.

*T. S. Felder,* for plaintiff in error. *L. D. Moore,* contra.

George, J. Joseph Birrick filed his suit against H. L. Barfield, to recover a strip of land, irregular in shape, running north and south along the western boundary of a tract owned by the plaintiff, as shown by a diagram attached to the petition. By an amendment the plaintiff described the land as a strip located between the line of an old wire fence built by C. M. Orr (one of the plaintiff's predecessors in title) and a new fence built by the defendant, and varying in width from a point to twenty-two feet, as shown by the diagram attached. On the trial of the case the jury found for the plaintiff "the premises in dispute." The defendant made a motion for new trial, which was overruled, and he excepted.

1. In addition to the usual general grounds, that is to say, that the verdict is contrary to the evidence and without evidence to support it, is decidedly and strongly against the weight of the evidence, and is contrary to law and the principles of equity and justice, the motion for new trial contains nine grounds. Eliminating for the moment the general grounds, three questions are raised. In two grounds of the motion exceptions are taken to certain charges of the court. In effect the court instructed the jury that the controlling question in the case was the location of the boundary line between the lands owned by the plaintiff and the lands owned by the defendant in the suit. It is insisted that the controlling issue in the case was one of title, and that it was incumbent upon the plaintiff to show by preponderance of the evi-

dence that he had legal title to the premises in dispute. In another ground of the motion error is assigned upon the court's failure to instruct the jury that before the plaintiff could recover he must show title in himself to the land. It is elementary that a plaintiff in ejectment, or in an action for land, must recover on the strength of his own title, and not on the weakness of that of his adversary. The issue is, did the plaintiff at the date the suit was commenced have legal title to the premises or to any estate or interest in them, or any part thereof, coupled with the then present right of entry, as against the defendant. It is also settled that on the general issue the burden of proof rests upon the plaintiff. Civil Code, § 5582; *Fullbright* v. *Neely,* 131 *Ga.* 342 (8), 344 (62 S. E. 188) ; *Taylor* v. *Meeks,* 133 *Ga.* 385 (65 S. E. 850). These general principles are applicable in an action for land, though the particular question between the parties resolves itself, under the evidence, into one of boundary. Nevertheless we are of the opinion that the assignments of error indicated above are without merit, in view of the following : By the fourth item of Mrs. Lockett's will, probated and admitted to record in 1888, the testatrix devised her plantation to her two nephews. William D. and John W. Mims, " to be divided between my two nephews William D. and John W., so that each shall have an equal number of acres, the dividing line to begin at the gate that is between me and the Jas. T. Nisbet's woods near where the ginhouse formerly stood, and to run in a northerly direction below my spring and through the Bivins field to R. E. Bowman's line in such a way that each division of the place so divided shall contain the same number of acres," the half lying east of the dividing line to go to William D. Mims and the half lying west of said line to belong to John W. Mims. It appeared without dispute that William and John Mims agreed upon a dividing line, and that the same was surveyed and marked out by the county surveyor under their direction. In January, 1893, William sold his half to C. M. Orr and J. W. Cabaniss, and Orr built a wire fence the entire length of the line. John was then living on his half of the land and saw the fence being built, and himself testified that he thought the fence was on the line, that he knew it was at one end, and supposed it followed the line all the way. He further testified that upon the completion of the fence he connected his fence, using the fence built by Orr as the line fence on the north side of his

place, and that on the south side of the place he cultivated up to the fence on the west side, and Orr cultivated up to the fence on the east side, and this continued from ten to twelve years, during which time Mims and Orr recognized the fence as the dividing line between them. Orr and Cabaniss conveyed the land purchased from William Mims to the Exchange Bank; and the bank, through its receivers, conveyed the land to Wright in 1907, and Wright took possession in January, 1908. Wright conveyed to the plaintiff and surrendered possession in January, 1918. John Mims conveyed his portion of the land to Wright on December 20, 1912, the deed reciting that the land conveyed was bounded on the east " by land of C. M. Orr or formerly C. M. Orr." Wright thus became the owner of both the William Mims and John Mims lands. Wright conveyed the John Mims tract to the plaintiff in error, Barfield, the deed reciting that the tract conveyed was bounded on the east " by lands formerly owned by C. M. Orr, but now owned by W. H. Wright." The grantor in this deed, Wright, testified that when he sold to Birrick he told him that the old wire fence (built by Orr) was the line. It will thus be seen that both the plaintiff and the defendant claim under the will of Mrs. Lockett as common grantor. Mrs. Lockett devised the east half of her plantation to William D. Mims. Title to the east half of the land passed by mesne conveyances to the plaintiff. The west half of the plantation was devised to John W. Mims, and title to the west half passed by mesne conveyances to the defendant (plaintiff in error). It was therefore not erroneous to instruct the jury that the question for them to determine is, " what is the true dividing line between these two tracts of land " (the charge excepted to). In view of the evidence in this case it is manifest that the failure of the court to instruct the jury that the plaintiff, in order to recover, must show title in himself, is not error requiring the grant of a new trial.

2. In four other grounds exceptions are taken to certain charges of the court relating to the establishment of a dividing line by coterminous landowners (1) by parol agreement accompanied by possession to the agreed line, or otherwise duly executed, and (2) by acquiescence for seven years by acts or declarations of the owners of adjoining land, as provided in the Civil Code, § 3821. It is settled that an unascertained or disputed boundary line between

coterminous proprietors may be established by parol agreement, if
the agreement be accompanied by actual possession to the agreed
line, or is otherwise duly executed. *Farr* v. *Woolfolk,* 118 *Ga.* 277,
280 (45 S. E. 230); *Osteen* v. *Wynn,* 131 *Ga.* 209 (3), 214 (62
S. E. 37, 127 Am. St. R. 212); *Gornto* v. *Wilson,* 141 *Ga.* 597
(2), 599 (81 S. E. 860). In effect the court instructed the jury
that if William D. Mims and John W. Mims agreed upon a divid-
ing line, and if the line as agreed upon was surveyed, marked out,
and recognized by them, the line thus established would be binding
upon the parties and their subsequent grantees. It is insisted that
the charge was error, because the court failed to instruct the jury
that the line must have been unsettled or disputed. Mrs. Lockett
owned a single tract of land. By her will she devised the east half
of the tract to William Mims and the west half to John Mims, and
directed the manner of its division. It is true that there was no
dispute concerning the will or its meaning. In *Shiver* v. *Hill,* 148.
*Ga.* 616 (97 S. E. 676), the trial court instructed the jury that a
parol agreement between coterminous landowners as to the bound-
ary line between them would operate to establish a line, where the
boundary line is "unascertained, unsettled, and not agreed to be-
tween the parties, and is disputed." The charge was held not to
be error requiring the grant of a new trial. The writer dissented,
regarding the dispute as a "false quantity." It appears that in the
principle of law announced the court was not really in disagree-
ment. The majority regarded a boundary line which was in fact
uncertain or unascertained as in dispute, considering the words
"uncertain," "unascertained," and "disputed," as practically syn-
onymous, while the writer thought the language of the trial court
in that case was misleading, inasmuch as the evidence showed that
the owners of distinct portions of a single tract of land, by parol
agreement, undertook to fix or establish an original dividing line
between them. The true rule is clearly stated in the opinion in
*Osteen* v. *Wynn,* supra, where it was said: "Where there is room
for controversy as to the location of a dividing line, the cotermi-
nous proprietors, independently of the cited code section, may orally
agree upon the line; and if the agreement is accompanied by pos-
session to the agreed line, or is otherwise duly executed, such
agreement will be valid and binding, and the line thus defined will
thereafter control their deeds." Inasmuch as the evidence in the

record shows unequivocally that the dividing line between the east and west halves of the Lockett plantation was in fact unascertained, the failure of the court to instruct the jury that the parol agreement, if duly executed, would bind the parties, provided the line was indefinite, uncertain, or disputed, is not error requiring the grant of a new trial.

Under the evidence in the record the jury was authorized to find, if indeed they were not required to find, that the parol agreement was duly executed. See *Hart* v. *Carter,* 150 *Ga.* 289 (103 S. E. 457).

3. On the trial of the case the plaintiff testified that the north end of the line between his land and the land of the defendant was marked by an iron post. After verdict, the defendant, as he contends, discovered that the iron post had been "placed" by the plaintiff after the suit was begun, for the purpose of furnishing false evidence of the line between his land and that of the defendant. In the last two grounds of the motion a new trial is prayed because of this newly discovered evidence. Section 5961 of the Civil Code provides that "any judgment, verdict, rule, or order of court which may have been obtained or entered up shall be set aside . . if it shall appear that the same was entered up in consequence of corrupt or wilful perjury," and "it shall be the duty of the court in which such verdict, judgment, rule, or order was obtained or entered up to cause the same to be set aside upon motion and notice to the adverse party; but it shall not be lawful for the said court to do so, unless the person charged with such perjury shall have been thereof duly convicted, and unless it shall appear to the said court that the said verdict, judgment, rule, or order could not have been obtained and entered up without the evidence of such perjured person." It is not claimed that the plaintiff in this case has been convicted of perjury. The newly discovered evidence is cumulative and impeaching in character. The plaintiff's testimony was not essential to his case. On the controlling issues in the case other evidence is of such character as to practically demand a verdict for the plaintiff, and it can not be said that the newly discovered evidence would likely produce a different result on another trial.

*Judgment affirmed. All the Justices concur.*