## TYSON *v.* ANDERSON.

The controlling issue being as to the location of the dividing line between lands of coterminous proprietors, and the evidence supporting the verdict for the defendant in ejectment, there was no error in refusing a new trial.

No. 5591. SEPTEMBER 8, 1927.

Ejectment. Before Judge Littlejohn. Sumter superior court. June 30, 1926.

*R. L. Maynard,* for plaintiff.

*Wallis & Fort, J. E. D. Shipp,* and *J. W. Smith,* for defendant.

ATKINSON, J.    E. J. Tyson was real plaintiff and Frank Anderson real defendant in a suit in ejectment for recovery of eight and eight tenths acres of land having three sides and lying in the southwest corner of lot number 178 in the 27th district of Sumter County.   The tract is bounded south and west by the original south and west lines of said lot 178, and on the remaining side by the west edge of the public road leading from Americus to the county farm.   The road crosses the south line at a point 740 feet east of the southwest corner of the lot, and the west line at a point 1042 feet north of said corner, thus cutting off the eight and eight tenths acres in the southwest corner of lot 178.   The original petition contained a single demise in the name of E. J. Tyson. The defendant filed the usual plea of not guilty, etc.   At the trial the plaintiff amended the petition, laying demises in the names of (1) Commercial City Bank, (2) J. William Walker, (3) Glen Edge as administrator of the estate of Balos E. Edge, deceased, (4) John H. Edge.   The defendant filed an amendment to his plea, wherein he laid claim to described land west of the road including the land in dispute, set up an estoppel against the plaintiff to claim any land west of the road, and prayed that the road be decreed to be the dividing line between the plaintiff and defendant as adjoining proprietors.   After introduction of evidence by both sides, the judge directed a verdict for the defendant.   The plaintiff's motion for a new trial being overruled, he excepted.

1.   It appears from the evidence that lot number 178 is in the same tier of lots and immediately east of lot number 179, and that immediately south of lot 179 is lot 182, and immediately south of

Boundaries, 9 C. J. p. 232, n. 6; p. 244, n. 2; p. 245, n. 7; p. 286, n. 99. New Trial, 29 Cyc. p. 824, n. 41.

43

lot 178 is lot 183; also that the county farm road extends into lot 183, and within said lot a short distance south of its intersection with the south line of 178 it intersects with another road leading from Americus to Plains. The Seaboard Air-Line Railway extends along a line a short distance south of the Plains road. The oldest deed introduced in evidence was from J. B. Hannon to Commercial City Bank. This deed purported to convey 137-1/2 acres, more or less, composed of smaller tracts described as follows: (1) "97-1/2 acres off of lot No. 178, known as Joe Mize home place, beginning at southwest corner of said lot, and running north on the west line of said lot to the northwest corner, thence east along the north line 17 chains, thence south 10 chains, thence diagonally to a point, making the base 11 chains, thence south from corner of garden to original south line, thence west on the south line to original southwest corner, making in said survey 97-1/2 acres." (2) "40 acres, consisting of 10 acres off of southeast corner of lot number 179; 3-1/2 acres off of northeast corner of lot No. 182; 3 acres in lot No. 183, lying west of the county poor farm road, and north of the Americus and Plains (formerly called Lumpkin) public road; and 23-1/2 acres off of lot No. 183, known as the McCrary old place, . . bounded on the south by said right of way of said railroad [Seaboard Air-Line], on the west by land lines between lots 182 and 183, and on the north by the Americus and Plains public road." The amendment to the plea admitted in effect that at the date of the execution of the deed Hannon "was owner of" the land which the deed purported to convey. It also appeared from the pleadings and evidence that Tyson and Anderson claimed to have derived title from the Commercial City Bank, the former under a conveyance of the first tract and the latter under a conveyance of the second tract.

As these deeds by the Commercial City Bank were not to the same property, the mere fact that the defendant claimed title to the second tract under grant from the bank was not an admission that the bank was owner of the first tract. This ruling does not conflict with *Dorris* v. *Dorris*, 149 *Ga.* 170 (99 S. E. 532), and similar cases where both parties claimed title to the same property from a common source. The amended plea, however, amounted to an admission that the bank in virtue of its deed from Hannon became "owner of" both tracts. In the light of this admission it was not essential for the plaintiff to show title in the bank.

2. The first deed executed by the bank, February 2, 1917, was to plaintiff's lessor, J. William Walker, which purported to convey the first tract referred to in the preceding division, describing it as follows: "All of that part of lot of land No. 178 in the 27th district of Sumter County, Georgia, as follows: beginning at the southwest corner of said lot, and running thence north along the west line to the northwest corner thereof, thence east along the north line 17 chains, thence south 10 chains, thence diagonally in a southeasterly direction to a point, making the base 11 chains, thence due south to the south line of said lot, thence west along the south line to the southwest corner, or starting point; all in one body, and containing 98-1/2 acres, more or less." This land was subsequently conveyed under the same descriptive terms by successive deeds of Walker to B. E. Edge, January 27, 1919, and Glen Edge as administrator of B. E. Edge to John H. Edge, August 6, 1920, and finally a bond for title was executed by John H. Edge to Tyson, the plaintiff. Subsequently to the deed from Walker to B. E. Edge, the bank negotiated a sale of land to D. F. Hall, and on April 23, 1920, issued to him a bond for title. Hall negotiated a sale of the land to Frank Anderson, the defendant, and on September 29, 1920, caused the bank to make a deed directly to Anderson. The land included in these sales was described in the deed to Anderson, as follows: "All of a certain tract of land, with exceptions hereinafter mentioned, described as follows: ten acres off of the southeast corner of lot 179; three and one half acres off the northeast corner of lot 182; and three acres in lot 183, lying west of the county poor farm and north of the Americus and Plains public road, 23-1/2 acres off lot 183, known as the McCrary place, . . said 23-1/2 acres bounded south by the S. A. L. Railway, on the west by land line between lots 182 and 183, and north by the Americus and Plains public road, and three acres belonging to C. L. Mize; said entire tract containing 40 acres, more or less, and being in the 27th dist. of Sumter Co., Ga., and being all of the J. B. Hanna [Hannon] place, except that heretofore sold to J. William Walker; said deeded land being all the above-described property, with the exception of that portion lying south of the road leading from Americus to Plains." The separate tracts thus conveyed were so located as to form one body of land.

The foregoing documentary evidence, considered with the admissions in the pleadings, prima facie shows title in Tyson and Anderson as coterminous proprietors of adjoining tracts. Being such coterminous proprietors, the controlling question is as to the proper location of the dividing line. *Peeples* v. *Rudulph,* 153 *Ga.* 17 (4) (111 S. E. 548).

3. It is declared by statute: "Acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." Civil Code (1910), § 3821. In *Osleen* v. *Wynn,* 131 *Ga.* 209 (3) (62 S. E. 37, 127 Am. St. R. 212), it was held: "An unascertained or disputed boundary line between coterminous proprietors may be established, (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed; or (2) by acquiescence for seven years by the acts or declarations of the owners of adjoining land, as provided in the Civil Code [1895], § 3247 [1910, § 3821]. . . If the line be established by oral agreement and possession be held to it, it is not necessary to the validity of such agreement that the possession continue for twenty years. . . In order that a line may be established by acquiescence for seven years by the acts or declarations of the owners of adjoining land, it is not essential that the acquiescence be manifested by a conventional agreement." In connection with the foregoing, see *Barfield* v. *Birrick,* 151 *Ga.* 618 (108 S. E. 43) ; *Shiver* v. *Hill,* 148 *Ga.* 616 (97 S. E. 676).

There was evidence tending to show that at the time of the sale of the first tract by the bank to Walker, neither the bank nor Walker knew the location of the original lines of lot number 178, and that the location of those lines was unascertained; also that under similar circumstances Walker and his successors in title had possession of the said first tract negotiated, and respectively maintained actual possession with reference to the road as the dividing line; also that at the time the bank sold the second tract to Hall and at Hall's request conveyed the same to Anderson, the parties to those transactions did not know the location of the original land-lot lines, but negotiated with reference to the road as the dividing line, and each during their respective tenures maintained actual possession up to the road, recognizing it as the dividing line; also that this recognition of the said road as a dividing line between the two tracts by the several proprietors of each con-

tinued from February 2, 1917, the date of the sale by the bank to Walker, until May 6, 1924, the date upon which suit was filed, thus extending over a period of more than seven years. In these circumstances, although there was no express agreement upon the subject, the jury was authorized to find, under application of the principles ruled in *Osteen* v. *Wynn,* quoted above, that the road had been established as the dividing line between the first and second tracts, and to render a verdict in favor of the defendant.

4. "The several grounds of the motion for new trial state in different forms that the verdict was contrary to law and without evidence to support it, and none of them raise the point that the direction of the verdict was erroneous because there were questions of fact that should have been submitted to the jury; therefore no such question is presented for decision." *Gilliard* v. *Johnston,* 161 *Ga.* 17 (129 S. E. 434); *Alley* v. *Candler,* 155 *Ga.* 739 (118 S. E. 354). The court directed a verdict for the defendant, but the grounds of the motion for a new trial upon which the assignments of error are predicated do not complain that the judgment was erroneous because the pleadings and evidence showed issues which should have been submitted to the jury.

5. The only grounds of the original motion for a new trial were the usual general grounds that the verdict was contrary to law and without evidence to support it. Two grounds were added by amendment, but these were merely elaborative of the original grounds. The evidence was sufficient to support the verdict for the defendant, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur.*