TIETJEN *et al.* v. DOBSON *et al.*

124

No. 7146.    FEBRUARY 20, 1930.

*R. L. Maynard,* for plaintiffs in error.    *Hollis Fort,* contra.

ATKINSON, J.    D. P. Holt owned land lot 203 in Sumter County. The adjoining lot 204 on the south was owned by A. J. Parker.    T. J. Upchurch became successor in title of Holt to lot 203, and D. W.

Tietjen became successor in title of Parker to lot 204. Upchurch died while in possession of lot 203; and on September 20, 1927, the administrators of his estate instituted an equitable action against Tietjen and others, to enjoin the cutting of timber and to recover damages arising from trespass for cutting timber. The land upon which the alleged trespass was being committed was described in the petition as "all of lot of land number two hundred and three (203), containing 230 acres, more or less." The petition further alleged: "That for more than twenty-five years said lot of land . . has been described as containing 230 acres, more or less, and that said D. P. Holt, who was for many years the county surveyor of Sumter County, placed an iron stake at the southwest corner of said lot, and the southeast corner of said lot, so that the south line of said lot could be and has been easily discernible for more than twenty-five years; and there is now, and has been, a wire fence running from the southwest corner about a third of the way along the south line, and the trees have been blazed and marked out, so that said south line on said lot is easily seen and observed and recognized by abutting-land owners; . . that across the entire southern line of said lot, and for a good distance north thereof, there is some very fine original growth pine trees, which trees are very valuable for timber purposes." The alleged trespass consisted in cutting these trees. The answer in substance admitted cutting the trees, but alleged that they were on lot number 204 and were cut by right of the title of Tietjen. The answer denied that lot number 203 originally contained 230 acres more or less, and alleged that it contained by original survey only 202-1/2 acres. Except as indicated above, the answer denied the material allegations of the petition. A verdict was returned for the plaintiffs. A motion for new trial was overruled, and the defendants excepted.

■ The first, second, and third special grounds of the motion for new trial complain of excerpts from the charge of the court stating the contentions of the plaintiff in regard to an agreement between Holt and Parker, the predecessors in title of the respective parties, with respect to location of the dividing line between the two proprietors. The criticism upon the charge is that, while evidence was submitted on the point, the charge was not authorized by the pleadings. In a note by the judge in certifying these grounds it was stated that the charge was based on evidence that

was admitted without objection. While there was no express reference in the pleadings as to an agreement between the predecessors in title as to the establishment of a dividing line, evidence was introduced by the plaintiff, which was admitted without objection, tending to establish such agreement. The subject of the agreement was germane to the allegations of the petition, and the petition could have been amended by alleging the agreement. In these circumstances the instructions excepted to do not furnish cause for the grant of a new trial. *Leilner* v. *Goodwin,* 60 *Ga.* 148; *Savannah, Florida &c. Railway* v. *Barber,* 71 *Ga.* 644 (2 a); *Ralleree* v. *Chapman,* 79 *Ga.* 574 (2) (4 S. E. 684); *Savannah, Thunderbolt &c. Railway* v. *Grogan,* 117 *Ga.* 461, 464 (43 S. E. 701).

■ A ground of the motion for new trial numbered 2-1/2 alleges that "the court erred in failing to instruct the jury as to the contentions of the defendants." By reference to the charge it appears that the court instructed the jury elaborately as to the contentions of the defendants as based either on the pleadings or the evidence. If it is intended by this ground to complain that the judge did not charge upon some particular contention, the ground should have been more specific. This ground is without merit.

■ Error is assigned on the following charge: "If two adjoining-land owners recognize a line as being the true line between their property or land, and they acquiesce in that line either by acts or by declarations and act upon the same, and they are in possession of the respective lands on each side of such recognized line, and that continues for seven years, then it becomes the fixed line dividing that property; whether it is the original land line or not, it would make no difference. That would be the true line between them and would fix the line to said property." The assignments of error are, first, that the charge is not authorized by the pleadings; second, that the charge is not a true statement of law, because the court should have charged "in this connection that actual possession of the land of the respective parties on each side of the recognized line was necessary" to establish a line by acquiescence. It is declared in the Civil Code (1910), § 3821: "Acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." *Osleen* v. *Wynn,* 131 *Ga.* 209 (3), 215 (62 S. E. 37, 127 Am. St. R. 212); *Sapp* v. *Odom,* 165 *Ga.* 437 (6) (141 S. E. 201). In *Catoosa Springs Co.* v. *Webb,* 123 *Ga.* 33

·(50 S. E. 942), it was said: "To establish a line by acquiescence, it must appear that the owners of the property to be affected by the establishment of the line either acted in such a manner for a space of seven years, or made such declarations during the continuance of that period, as to show that the line claimed was the true line between the estates." Under the code section quoted, acts of the respective parties tending to show actual possession up to a given line of division between their respective lots for a period of seven years may be considered in passing upon the question of acquiescence, but such actual possession is not indispensable to the establishment of the line. In *Tyson* v. *Anderson,* 164 *Ga.* 673, 676 (139 S. E. 410), the evidence tended to support the establishment of a dividing line by acquiescence for the prescribed period. The evidence tended to show that the respective parties maintained actual possession up to a certain road as a dividing line. It was held that the evidence was sufficient to establish the line by acquiescence. The statute (§ 3821), does not declare, nor does the above-cited decision hold, that actual possession by both parties up to the line for the prescribed period is the only way of showing acquiescence in a dividing line. The charge of the court was not erroneous, as against the defendants, for either of the reasons assigned.

■ The court instructed the jury that the plaintiffs contend that more than 25 years in the past a dispute existed between Holt and Parker as to where the line between the lots 203 and 204 was located; that they came to an agreement as to where the line should be; that the agreed line was where certain iron stakes were found; that Holt and Parker set up the stakes and agreed that that should mark the line. The criticisms upon the charge were, first, that it was not authorized by the pleadings; second, that it was not authorized by the evidence; third, that there is no evidence that Holt and Parker set up any stakes or that they agreed that the stakes should mark the line between them. John F. McMath testified that Holt and Parker "had an agreement as to where that line was. An iron stob was placed there, between thirty-five and forty years ago, I would say. . . While I lived at the Barney Parker place [probably three years] I went to this place once or twice a month. From the time that D. P. Holt and A. J. Parker agreed on this line, there has never been any dispute over it to my

knowledge. . . There was some barbed wire at the southwest corner two or three months ago. That barbed wire . . coincided with the line that Mr. Holt and Mr. Parker agreed on. . . I heard Mr. Parker make a statement about this line after it was established as' I have testified. ·. . I asked him about getting some lightwood, and he told me to go ahead and get all I wanted. And in talking with him about the lightwood, etc., he mentioned the line there. I asked him if the line that was there now that he and Mr. Holt had so much trouble over, or had trouble over, was satisfactory, and he said he was satisfied. It was satisfactory with him, and he guessed it was with Mr. Holt. . . Mr. Holt did not object to that line to me, and I never heard of his having done so. . . The controversy between Mr. Parker and Mr. Holt was over the land line between lots 203 and 204. . . I have seen all along that line, and you will find the same bluff on the Parker side, an old field cleared up to the line, and on the Holt side find original woods and bluff there also. From the southwest corner you strike a pine sapling thicket on the Parker place. I never saw it in cultivation, but I am presuming from the timber that is there that it had been in cultivation, and I'm pretty sure that's a very correct presumption."

R. M. Deriso testified: "Mr. D. P. Holt was county surveyor of Sumter County, Georgia. . . I lived on the premises with Mr. Holt. Lot No. 203 is the lot that the house is on. . . I recall putting something at the corner of a lot there, an iron stob. . . It was a one-horse wagon axle. Mr. Holt and I cut them in two at the shops. They were put at the southeast and southwest corners of the lot. . . Mr. Holt is dead now. . . Mr. Holt lived out there on what's known as the old Holt place, twelve or fifteen years. . . These two stobs were placed where we put them, to signify the corners of the land between Mr. Holt and Mr. Parker. I couldn't say positively now that there was anything else between the southeast corner and the southwest corner, that indicated that line. During the surveying I was alone. . . I don't think a fence was erected on that south side. I don't recall it. I don't recall anything having been put there while I was there, marking that, other than the iron stobs. It's been thirty years since the line was run. ·. . At the time I was there, there was timber near that south line. I rather think now it was second-

growth pine. There was some mighty pretty timber there. . . Mr. Holt enjoyed this land and lived on it and worked it, farmed it. He went down in there, these woods, and laid claim to them. After that line was run, if Mr. Holt laid any claim to any land or timber south of that line, I never heard him say anything about it. From the time those iron stobs were placed down there until this lawsuit, I never heard of any dispute. I say I lived on the premises ten years. . . There is no cultivatable land along the line that I say is the south line of lot No. 203."

A number of other witnesses testified, one of them to the effect that in recent years he had made a survey for the purpose of locating the dividing lines between lots 203 and 204; that he commenced at the iron post referred to by the witness McMath as marking the southwest corner of lot 203, and followed the correct course as indicated by his instruments to correspond with the course of the original land lines; that along this line he found certain ancient blazes on trees, indicating an old survey of the line; that upon reaching the intersection of the north and south lines which would mark the southwest corner of the lot according to the survey he was making, he could not find an iron stob, but found a tree on which were blazes such as surveyors make to indicate a corner; also that there were a good many other trees in the woods through which the line was run, which contained the markings of surveyors, that were not on the line that he was running. Other witnesses testified as to another line from the west to the east side of the lot, which had been run by processioners across the lot and which was located about 400 feet north from the above-mentioned line between the iron corners; that the timber in question was on the strip of land between the two lines mentioned; that at the time the processioners marked the second line Parker was present and objected to its location, and threatened to "carry it into court." The witness giving testimony as to such objection by Parker could not say that this was before the placing of the iron corners, or that Parker and Holt did not subsequently come to an agreement as to the line. There was no evidence of formal appointment of processioners, or as to report by processioners to the ordinary. At the time of making a recent survey it was stated by one of the predecessors in title of the defendants that he did not know but had been told that the iron post which was found marked the southwest corner of the

line. Except as indicated above, there was no evidence as to participation by Parker or his successors in title, to indicate an agreement as to a dividing line between the parties, or actual possession by either party up to an agreed line, or other action by either party tending to show execution of a parol agreement to establish the line between the two iron stake corners as the dividing line between lots 203 and 204.

The portion of the charge last quoted is not erroneous for either of the first or second reasons assigned. The third reason assigned is that it was unauthorized by the evidence. This portion of the charge relates to establishment of a dividing line, not by acquiescence shown by declarations or acts of the adjoining proprietors for a period of seven years as provided in the Civil Code (1910), § 3821, but to establishment of a dividing line by oral agreement between adjoining proprietors and subsequent execution of such agreement. It was held in *Osteen* v. *Wynn,* supra, that "an unascertained or disputed boundary line between coterminous proprietors may be established . . by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed." In the opinion it was said: "In *Farr* v. *Woolfolk,* 118 *Ga.* 277 (45 S. E. 230), this court pointed out the distinction between a dividing line established by acquiescence for seven years by acts or declarations of adjoining landowners as provided in the Civil Code, § 3247, and a parol agreement between coterminous proprietors that a certain line shall be the true dividing line. Where there is room for controversy as to the location of a dividing line, the coterminous proprietors, independently of the cited code section, may orally agree upon the line; and if the agreement is accompanied by possession to the agreed line, or is otherwise duly executed, such agreement will be valid and binding, and the line thus defined will thereafter control their deeds. However, it is not necessary that possession under the agreed line should be had for twenty years, to give validity to the agreement, though the agreement derives additional weight from long acquiescence. A parol agreement between adjoining landowners to fix a boundary line between their respective tracts theretofore unascertained, uncertain, or disputed, is not within the operation of the statute of frauds, for the reason that no estate is created. When a boundary line is established by consent, the coterminous proprietors hold up

to it by virtue of their title deeds, and not by virtue of a parol transfer of title. Hagey v. Detweiler, 35 Pa. St. 409. A line is not fixed or located by verbal agreement, unless actual possession is had up to the line, or something be done to execute the agreement in the direction of physical identification, as the erection of monuments, fences, marking of trees, or the like." See also *Barfield* v. *Birrick,* 151 *Ga.* 618 (2) (108 S. E. 43), and cit.; *Childers* v. *Dedman,* 157 *Ga.* 632 (2) (122 S. E. 45), and cit. After stating the rule expressed in *Osteen* v. *Wynn,* supra, it was held in *Hart* v. *Carter,* 150 *Ga.* 289 (2) (103 S. E. 457): "Where the line between coterminous proprietors is indefinite, unascertained, or disputed, a parol agreement fixing the dividing line may be executed by the erection of physical monuments upon the agreed line, or by the marking of trees plainly indicating the line. Actual occupancy to the agreed line, by cultivation or the erection of fences on the line, is not indispensable to the due execution of the parol agreement." The "erection of physical monuments upon the agreed line, or by the marking of trees plainly indicating the line," as referred to in the above decisions, had reference to mutual conduct and assent of both parties. The effect of the ruling is to decide that such mutual conduct and assent of the parties will be sufficient execution of the oral agreement to establish the dividing line. See *Barfield* v. *Birrick,* and *Osteen* v. *Wynn,* supra; *Shiver* v. *Hill,* 148 *Ga.* 616 (97 S. E. 676); *Brooks* v. *Goodin,* 23 *Ga. App.* 800 (99 S. E. 540). In the instant case there was evidence tending to show that Holt and Parker had agreed upon a dividing line; that a dividing line was located by the placing of iron stakes as marking the southwest and southeast corners of the lot and the blazing of trees between the corners; and that in after years Parker admitted that he had agreed with Holt upon a dividing line, and that the line so agreed upon was satisfactory to him. There was no direct evidence that Parker knew of the placing of the iron corners or the blazing of the line trees between them, but the admission is sufficient to authorize a finding that he knew the facts and assented to them as in execution of the agreement. The charge of the court was not erroneous as without evidence to support it.

■ The court charged: "Where the owners of property agree upon a line as dividing their property, where they are coterminous landowners, that becomes the dividing line of those lands and

**132**

fixes the dividing line between those lands; and if that agreement is made and executed, it is binding upon subsequent purchasers of that land. It becomes the line dividing the respective property at that point." Error was assigned upon this charge, on the grounds (a) that it is not a correct statement of the law, the rule being that where there is a dispute between coterminous landowners as to location of the dividing line, and the parties agree upon the location of such line and the "agreement is executed, either by taking actual possession up to such line, or the parties act upon such agreement in building of houses, fences etc., it then becomes the dividing line between said coterminous landowners;" (b) that there is no evidence that an agreement was made between the coterminous landowners marking the line as claimed by the plaintiff the dividing line between them. Immediately following the charge quoted above the judge proceeded as follows: "They [the parties] can execute that agreement . . by actual possession; and actual possession, as I stated, may be evidenced by cultivation, or by fencing, putting a fence there, and things of that kind; but that is not the only way. The execution of the agreement, if such was ever entered into between the coterminous landowners—adjoining-land owners, it can be done that way, but that is not the only way. Where the line between the coterminus landowners is in dispute, uncertain or disputed, a parol agreement fixing the dividing line may be executed by the erection of physical monuments upon the agreed line, or by the marking of trees, plainly indicating the line. Actual occupation to the agreed line by cultivation, or the erection of fences on the line, is not indispensable to the execution of the parol agreement. It is not required that there should be actual occupation, but it can be done by monuments marking the lines." When the charge complained of is considered in connection with its context as quoted above, it was not a misstatement of the law, nor was it without evidence to authorize it. The evidence set out in the preceding division is sufficient to have authorized a finding that the parties agreed upon the line as contended for by the plaintiffs.

■ Error is assigned on the following charge: "They can execute that agreement, gentlemen, by actual possession, and actual possession, as I stated, may be evidenced by cultivation, or by fencing, putting a fence there, and things of that kind; but that is not the

only way. The execution of the agreement, if such was ever entered into between the coterminous landowners—adjoining-land owners, it can be done that way, but that is not the only way. Where the line between the coterminous landowners is in dispute, uncertain or disputed, a parol agreement fixing the dividing line may be executed by the erection of physical monuments upon the agreed line, or by the marking of trees plainly indicating the line. Actual occupation to the agreed line by cultivation, or the erection of fences on the line, is not indispensable to the execution of the parol agreement. It is not required that there should be actual occupation, but it can be done by monuments marking the lines." The grounds of exception to this part of the charge are (a) that it was not authorized by the evidence; (b) that it was not authorized by the pleadings; (c) that it is misleading in that the court did not instruct the jury whether the placing of monuments or the marking of trees must be done jointly by the coterminous landowners, or whether the placing of such monuments and marking of trees, if done by either of the parties, was an execution of said alleged parol agreement fixing the line, the contention of the defendants being that the posts or monuments were not placed by Holt and Jackson, the coterminous landowners, but that the same were placed by Holt and Bob Deriso, and that the defendants would not be bound by any monuments placed by Holt and Deriso, even on an agreed line, unless the monuments were placed in the presence of or by both of the coterminous landowners, and those executing the alleged parol agreement. The rulings expressed in divisions 1 and 4 of this opinion sufficiently indicate that there is no merit in the first and second assignments of error upon this charge. The charge stated a correct principle of law applicable to the case; and it is not a good exception to the charge to allege that it is misleading because it fails to state another principle of law applicable to the case.

The eleventh ground of the motion for new trial complains of a refusal of a request to charge, in connection with the charge set forth in the preceding division: "If a parol agreement is relied upon and executed by the placing of stakes or monuments or marking of trees, the agreement will not become executed in this way unless the monuments are placed and set up by the coterminous owners. Placing of monuments by one of these parties without

knowledge of the other would not be such an execution of such parol agreement, if you believe there was such an agreement." In the assignment of error it is stated: "Movant contends that the evidence disclosed that Parker was not present when the monuments claimed to have been placed by Holt and Deriso were placed, and movant contends the evidence fails to show any knowledge on the part of Parker of the placing of such monuments; and the request to charge was a true and correct principle of law, and was applicable to the facts or evidence in the case." The evidence set out in the fourth division of this opinion did not show affirmatively that Parker was not present or did not know when the monument was placed marking the dividing line, but it was sufficient to raise an issue for the jury to determine, as to whether he was present and participated in placing the monuments and marking the trees. In this view of the evidence the request to charge stated a correct principle of law applicable to the case, and the error in refusing so to charge is sufficient cause to require a reversal of the judgment refusing a new trial.

■ The eighth ground of the motion complains of a failure of the court to charge without request. The language employed in this ground does not accurately state a correct principle of law applicable to the case, and there was no error in overruling this ground.

■ The ninth ground of the motion for new trial complains of the charge: "After determining the facts, if you find from the evidence of the case and settle where the line is, if you find that the defendants have cut timber belonging to the plaintiff, that it was on his land, according to what you find to be the proper line, you can then inquire and determine whether it was cut in good faith or bad faith. If it was cut in good faith, that is, if the cutting and removal of the timber by the defendants was done in good faith, honestly believing that it was their timber, and that they had the right to cut and remove it, and you should determine that it was not their timber, then the defendants would only be liable for the value per thousand feet of the timber as it stood when they cut it, and not the value of it manufactured into lumber." The assignments of error upon this charge are (a) that it is not authorized by the evidence; (b) that "the court should have instructed the jury that if it was cut by the defendants under the

claim of right, they could not be chargeable with having exercised bad faith." There was no merit in this ground.

■ The tenth ground complains of the following charge: "If, after taking the facts in this case, you should find under the facts of the case that these defendants cut and removed timber from the land of the plaintiff, and that it was not done in good faith, that they were not doing so honestly believing that they were cutting the timber that belonged to them, but it was done in bad faith, then the plaintiff would be entitled to recover the value of the timber after it was manufactured into lumber." The assignments of error are (a) there was no evidence to show that the timber "was manufactured into any particular lumber;" (b) there was no evidence to show "that the defendants in cutting said timber acted in bad faith;" (c) that the court failed to define the expression "in bad faith." There was no merit in this ground.

■ The twelfth ground complains of a failure to charge, without request: "That where the person is in actual possession of any portion of lands included in the boundary as is given in the deed under which he holds, and that this possession can not be destroyed under the claim of seven years possession unless the party claiming a portion of the land was in actual, peaceable, uninterrupted, quiet, and adverse possession of the same for a period of seven years." There was no merit in this ground.

*Judgment reversed. All the Justices concur.*