1. A petition stating a cause of action good at law should not be dismissed on general demurrer, even though equitable relief prayed might not be grantable. Therefore the original ejectment suit in this case, to which there was no demurrer, was maintainable, irrespective of whether an equitable amendment was subject to demurrer as showing an adequate remedy at law and no ground for equitable relief.
(a) The question, raised by the demurrer to the amendment, as to whether the amendment showed any basis for an injunction, is moot, since the judgment against the defendants failed to grant an injunction.
(b) There is no merit in the ground of demurrer to the amendment, that the plaintiff showed no right to consolidate with her ejectment suit against a husband and wife, to recover a disputed strip of land, a subsequent appeal in the same court by the wife alone from a return of processioners, and that such a consolidation would be a misjoinder of parties. This is true, since the husband was already a party defendant in the ejectment case; since the controlling question in both cases was the correct location of the boundary line; and since the plaintiff could not obtain an adjudication of title or a writ of possession in the processioning case
2. Acquiescence for seven years by the acts or declarations of coterminous proprietors of land, as provided by the Code, § 85-1602, will establish the boundary line between their tracts, without the necessity of a conventional agreement; and a line so established is binding on the grantees of such owners. *Page 358 
3. Under the preceding rules and the uncontradicted evidence, the verdict for the plaintiff was demanded on the question of acquiescence for seven years by the defendants' predecessors in title in the boundary claimed by the plaintiff.
4. The verdict for the plaintiff being thus demanded, it is unnecessary to consider the special exceptions to the refusal of a new trial.
 No. 14323. JANUARY 14, 1943. REHEARING DENIED FEBRUARY 12, 1943.
In February, 1940, Mrs. Caroline Dowman filed an ejectment suit against Mrs. Josie E. McGill and her husband, Edward J. McGill, to recover a strip of land of which they had taken possession in 1938, and which was alleged to be a part of the plaintiff's land, described as follows:
"In lot 102, in the 13th land district of Rabun County, Georgia, beginning at a stake on the line of the Georgia Power Company on the northeast corner; thence along the line of [said] Power Company lands about 300 feet more or less to a stake on said line; thence nearly south to a marked maple on the Stambaugh Mining Company lands; thence nearly east along said line to a Spanish oak tree; thence nearly north a distance of 300 feet, more or less, to the beginning corner; containing 2 acres, more or less."
The plaintiff claimed this disputed strip under a recorded deed, executed in May, 1925 by James C. Benfield to her husband, Dr. Charles Dowman, who died in November, 1931, and under a recorded deed made to her by his executor in July, 1932, describing the conveyed property in the language quoted.
The defendants answered, claiming title to the disputed strip under a recorded deed executed in May, 1927, by James C. Benfield (the same grantor who had previously executed the deed to plaintiff's husband) to Dr. Hal M. Davison, describing the conveyed property as follows:
"In the 13th land district of [Rabun County, Georgia], and being a part of land lot number 102 in said district, bounded as follows: Beginning at the corner of lands of Charles E. Dowman, and Georgia Railway and Power Company on the northeast corner;
thence a west course 292 feet more or less to a dogwood stake, the corner of Mobley lands; thence along the Mobley line a south course to a black oak on the Stambaugh Mining Company line; thence nearly east along the Stambaugh line to a maple tree a distance *Page 359 
of 300 feet; thence a northerly direction to Dr. CharlesDowman's line to the beginning corner; containing 2 acres more or less."
The defendants further claimed under a recorded deed, executed in October, 1936, by Dr. Davison to Mrs. McGill, describing the property in the language of the deed from Benfield to him.
After the filing of the ejectment suit, Mrs. McGill in July, 1940, filed processioning proceedings to mark the disputed line forming the eastern boundary of her land and the western boundary of Mrs. Dowman's land. In August, 1940, the processioners filed their report, with a surveyor's plat, determining the line as:
"Beginning at a maple, thence running north 30 degrees west240 feet to point at west side of large poplar tree; thence north25 degrees 128 feet, more or less, to contour line of Georgia Railway Power Company."
In October, 1940, Mrs. McGill filed in the same superior court a protest and appeal from this return, and in her appeal claimed that the true line was as follows:
"Commencing at the large maple designated on the plat . . ;thence north 23 degrees 30 minutes west 323 feet to what isknown as a cotton wood tree . . ; that on the correct line there is a rail fence that was constructed by Mrs. Josie E. McGill after her said tract of land was surveyed and after the lines around the same were pointed out by J. C. Benfield."
In November, 1940, Mrs. Dowman, plaintiff in the first filed ejectment suit, filed an equitable amendment, setting up the processioning proceedings, and the appeal therefrom pending in the same court; and alleging that the same issue was involved in both cases; that "a multiplicity of suits and a circuity of actions will result unless the processioning proceeding is consolidated with this [ejectment] case;" and "plaintiff believes that she will be harassed by groundless and extended litigation on the part of the defendants, and that she will suffer irreparable damage because of delay or otherwise, unless the defendants are restrained and enjoined from proceeding further with said processioning application or otherwise;" and praying for relief accordingly.
To this amendment, Mr. and Mrs. McGill, defendants in Mrs. Dowman's original ejectment suit, filed a general and special demurrer, on the grounds that no basis for equitable relief appeared; *Page 360 
that the plaintiff had an adequate remedy at law in the processioning case; that the plaintiff was attempting to consolidate a processioning proceeding, to which Mr. McGill was not a party, with the plaintiff's ejectment suit against both him and his wife, and this, if allowed, would constitute a misjoinder of parties; and that no facts appeared to authorize the grant of a restraining order and injunction. No injunction was granted in the judgment entered on the verdict for the plaintiff. The defendants filed an answer, with contentions as to their title to the disputed strip and boundary line as above stated.
The judge entered orders overruling the demurrers, and consolidating the two cases; to which the defendants excepted pendente lite, and assign error thereon.
On the trial of the consolidated cases, Mrs. McGill moved that the court grant her the right to open and conclude the argument, and the right to strike first in selecting the jury, on the ground that she was the plaintiff in the processioning proceeding, seeking to determine "the dividing line," and the burden was on her in that case. She excepted to the refusal of this request, and in her exceptions pendente lite assigns it as error.
The jury found for the plaintiff, Mrs. Dowman, and a judgment was entered, fixing the dividing line as follows:
"Beginning at a marked maple tree on the Stambaugh Mining Company lands between the lands of [Mrs. Dowman and Mrs. McGill], said marked maple being the southwest corner of the Dowman
lands and the southeast corner of the McGill property; running thence north 30 degrees west 240 feet to a point on thewest side of a large poplar tree; thence a straight line north 30 degrees west to the contour line of the Georgia Power Company."
The judgment, without granting an injunction, fixed ownership in Mrs. Dowman to the land described in her suit, and fixed the western boundary of her land adjoining that of Mrs. McGill as just quoted; granted a writ of possession in favor of the plaintiff; and awarded costs only against Mrs. McGill.
The defendants excepted to the refusal of a new trial on the general grounds; and on special grounds, as to the admission of evidence (not related to the question of acquiescence by previous owners in the boundary line), to the giving of certain instructions to the jury, and to the refusal to give Mrs. McGill the opening and concluding argument. *Page 361 
As to where the disputed boundary line should be under the respective deeds, there was testimony by the previous common grantor and other witnesses sustaining the plaintiff's contention as to its location. There was evidence for the defendants, that certain trees, as testified and as indicated by photographs in evidence, contained marks which defendants contended showed the line; that certain stakes now existed; and that these markings and stakes corresponded with the line that they claimed along a fence which they had nailed to these trees; and there were also general statements by witnesses as to what was the correct line, tending to support the defendants' contentions. This evidence was disputed by evidence for the plaintiff. However, there was uncontradicted testimony for the plaintiff that the line as claimed by her had been established by acquiescence for more than seven years, by the declarations and acts of the respective owners of the two tracts and their predecessors in title, before Mrs. McGill obtained her deed in 1936.
James C. Benfield, the common grantor, testified: that he first "sold a lot to Dr. Dowman . . a year before the [deed was] made. He first had a bond for title. . . The line started at amaple on the southeast corner of the line, and ran to the Georgia Power Company contour line to a stake, that was a cottonwood stake. There was a poplar tree there that Doctor wanted, and I . . sold him the lot with the line including thattree. I fixed the line for Dr. Dowman so that the poplar tree would be on the line. The line goes on the west side of thepoplar tree, beginning at the maple I believe on top of the hill that had a blaze in it. I first sold to Albert Mobley, and then I sold Dr. Hal M. Davison what was between the two lots. I sold Mobley what was over rather west of Mrs. Dowman's property. . .I showed Dr. Davison where the line was between Mrs. Dowman'sproperty and my property. We walked over the line, and he knew where all the four corners were. The poplar tree was pointed outto Dr. Davison. He wanted the tree too; however, I told him thetree belonged to Dr. Dowman; Dr. Davison's line ran right down onthe west side of the poplar tree. I pointed out to Dr. Davisonthe same line I pointed out to Dr. Dowman as the dividing linebetween the two lots. . . Dr. Davison never built on the lot I sold him. Some nine or ten years later the property was sold to *Page 362 
defendants. After that I was over there one time and I told them that the line came right down from the maple by the poplar. . . I have been there since Mr. and Mrs. McGill built, and there is afence up and down there, which is over on Mrs. Dowman'sside. . . It is some eight or ten feet. . . The fence goes on the eastside of the poplar tree. . . There is no question about [the marked maple tree on the south end] being the corner between the two parties. . . The big poplar is still there where it was pointed out to Dr. Dowman and Dr. Davison. I did not put any marks on the red oak or cottonwood, nor did I authorize anybody else to. The trees have been cut down between the poplar tree and blazed maple since we ran the line. . . A lot of the stakes have been taken up. . . I directed the fellows to mark on the line. The poplar is not marked, because it is not on the line. Theline is over the roots, . . . right across the root of the poplar on the west side. This is the line I sold to. . . I sold a lot to Dr. Dowman in 1924, and from that time on until Isold the adjoining lot to Dr. Davison, I recognized the linebetween Dr. Dowman and me as the line beginning at the blazedmaple and by the west side of the big poplar. . . At the time I sold to Dr. Davison, there was no fence to mark the line between the two properties, just the corners and the stake for the other corner and a few blazed trees or hacked trees."
Lawrence Benfield testified, that he helped James C. Benfield run the line around the lot sold to Dr. Dowman in 1924 or 1925; that "it was a blazed maple coming down on the west side of thepoplar tree there . . coming . . on down to the road or the contour line of the Georgia Power Company;" that was "where Mr. James Benfield told us to put the line, and that is where we put it;" that the trees then marked had been cut down; and that the line passed "in the neighborhood of six feet" west of the big poplar.
Mrs. Dowman, the plaintiff, testified: that "after Dr. Dowman bought this property, [she remembered] Dr. Davison buying the adjoining lot;" that "there was never any dispute between us and Dr. Davison as to where the line was. We had laughed a good deal about his wanting to get the big poplar tree, and Dr. Davisonsaying, `You beat me out of it.' It was thoroughly understood between us and Dr. Davison. In this discussion with Dr. Davison *Page 363 the line was discussed as beginning at the blazed maple andcoming down by the west side of the big poplar and along to thecontour line of the Georgia Power Company. This is the line between the two lots. This is the line I am contending fornow." She further testified that the first trouble about the line was after Dr. Davison sold the property (in 1936); that the fence built by the defendants, according to what they contended was the line, "took part of what had been [her] garden;" and"took most of [her] parking lot;" that "Dr. Davison never questioned in any way the location of the dividing line . . as being from the blazed maple right down by the west side of the big poplar on to the contour line of the Georgia Power Company. It was mentioned several times. He did not say anything particular, except he just knew where the line was and about the tree being on the other side of his line where he could not get it and where he would like to locate his house if he built. He was up there several times during that period."
Dr. Davison testified: he "had been a close personal friend of Dr. Dowman, for some time, and for that reason" bought the adjoining lot. "Mr. Benfield [the original owner of both lots] showed me around and showed me the boundary line between Dr. Dowman's land" and the land bought by the witness. He recalled that "while we were walking on the line, . . I put my arm around a big tree and said, `Well, this is a nice tree, I hope it is on my property.'" That "Mr. Benfield laughed and said, `No, that is not on your property, it is on Dr. Dowman's property; your lineruns across the roots of this tree on the other side;'" but the witness did not recall what kind of tree it was. He had been up "to visit Dr. Dowman at his place at Nacoochee Lake in Rabun County," after witness bought his lot in 1927. The witness had seen "a garden between the [Dowman] house and that tree, and aparking lot . . toward the property [witness] bought. . . None of that particular lot I discussed was on my property. I have seen at least five or six cars on that particular parking lot. . .All of [the] parking lot was on Dr. Dowman's properly, and the tree according to what Mr. Benfield told me that day, was just on the edge of Dr. Dowman's property." The garden on the Dowman lot "had some vegetables and flowers, . . and was between the house and parking lot." While the witness could not recall whether *Page 364 
the kind of tree discussed was a poplar or some other kind, he gave no testimony, in contradiction of the quoted evidence, as to his discussions with the original owner and Dr. and Mrs. Dowman with regard to the line.
There was some testimony that at the hearing before the processioners, Benfield, the common grantor of the parties, and others who were with him at the original marking of the boundary line of the lot first sold to Dr. Dowman, located the line as being across the roots of the big poplar tree on its west side; and that the processioners made their return accordingly, but, instead of continuing a straight line from the maple on the southern boundary through the location at the west of the poplar to the northern boundary, they had made a slight deviation from the poplar so as to give to the defendants some steps built by them after they obtained their deed from Dr. Davison, in 1936. However, under the appeal of Mrs. McGill from the whole return of the processioners, the question as to the correct entire boundary line between the parties was brought to the superior court; and this was also the controlling question in the ejectment suit.
1. Even though a plaintiff might not be entitled to equitable relief under his averments or prayers, the petition should not be dismissed on general demurrer if it states a cause of action good at law, since in such a case he would be entitled to prove and enforce his strictly legal rights and remedies according to the rules of law. Latham v. Flower,192 Ga. 686, 690 (16 S.E.2d 591), and cit. Accordingly, since the original petition against a husband and wife was an action of ejectment in the usual form, to which there was no demurrer, the suit was maintainable irrespective of the merits of the general demurrer of the defendants to an equitable amendment seeking to consolidate the defendant wife's appeal in the same court in a subsequent processioning proceeding brought by her, on the ground that the plaintiff showed an adequate remedy at law and no basis for the equitable relief prayed.
(a) The judgment entered on the jury's verdict for the plaintiff only fixed the dividing line and ownership of the disputed tract, *Page 365 
without granting an injunction. Therefore the question raised by the demurrer to the amendment, that it showed no basis for an injunction, is moot.
(b) There is no merit in the grounds of demurrer to the amendment, that a consolidation of the plaintiff's ejectment suit against the husband and wife, and of the wife's appeal to the same court from the processioners' return in the court of ordinary, would be improper, and would be a misjoinder of parties, because the husband was not a party to the wife's appeal — since the question as to the boundary line was the one controlling issue in both cases, and the wife as owner of the title and the husband as head of the family were the sole defendants in the ejectment suit, which was first filed. This is true since the ejectment suit was brought to determine, not only the proper line, but title and possession of the disputed tract; and the court had no jurisdiction in the processioning proceeding alone to adjudge the title or grant a writ of possession. SeeByrd v. McLucas, 194 Ga. 40 (20 S.E.2d 597), and cit.;Kidd v. Finch, 188 Ga. 492, 496 (4 S.E.2d 187); DublinVeneer Co. v. Kendrick, 179 Ga. 237, 244 (175 S.E. 687);Sanders v. Wilson, 193 Ga. 393, 396 (18 S.E.2d 765), and cit.; Code, § 3-112.
2. "`An unascertained or disputed boundary line between coterminous proprietors may be established, (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed; or (2) by acquiescence for seven years by the acts or declarations of the owners of adjoining land, as provided in the Civil Code, § 3247' (1933, § 85-1602). . . `In order that a line may be established by acquiescence for seven years by the acts or declarations of the owners of adjoining land, it is not essential that the acquiescence be manifested by a conventional agreement. . . When a line has been located by an executed parol agreement between the coterminous proprietors, or established by seven years acquiescence as provided by the Civil Code, . . the line thus located and established is binding on the grantees of the coterminous proprietors.'" Lockwood v. Daniel, 193 Ga. 122
(17 S.E.2d 542), and cit.; Osteen v. Wynn, 131 Ga. 209
(3, 4) (62 S.E. 37, 127 Am. St. R. 212); Bradley v. Shelton,189 Ga. 696 (4, a) (7 S.E.2d 261), and cit.; Tietjen v.Dobson, 170 Ga. 123 (3), 126 (152 S.E. 222, 69 A.L.R. 1408); Robertson v. Abernathy, 192 Ga. 694 (3), 697 (16 S.E.2d 584). *Page 366 
3. Under the last preceding rules, and uncontradicted evidence as to acquiescence for more than seven years in the boundary line contended for by the plaintiff, between the predecessors in title of the present parties before the defendant wife obtained her deed in 1936, the verdict for the plaintiff was demanded. SeeFoster v. Thomas, 193 Ga. 823 (20 S.E.2d 80). The testimony of the common grantor of the present parties, and of another witness who helped him run the original line, was undisputed as to their running the line to the northern boundary of both lots from a marked maple corner over the roots of a poplar tree on its west side, instead of on its east side as contended by the defendants; and as to the pointing out of this line by the original grantor to plaintiff's deceased husband, the first grantee from whom she took title; and as to the acquiescence of both the original grantor and his grantee in such line from 1924 until 1927, when the grantor sold the adjoining lot to the defendant wife's predecessor in title. The evidence was also undisputed as to the pointing out of the same boundary line by the common grantor to such second grantee at the time the deed was executed to him in 1927; and as to the continued acquiescence between this second grantee and the plaintiff and her husband, until this owner of the adjoining lot sold it to the defendant wife in 1936, in the line as contended for by the plaintiff in her suit, by the declarations of both the wife's grantor and the plaintiff and her husband recognizing such line, and by the acts of the plaintiff, without objection from the wife's grantor, enclosing part of the now disputed land as a garden and using part as a parking lot.
4. The verdict for the plaintiff being demanded, it is unnecessary to consider special exceptions to the refusal to give the defendant wife the opening and concluding argument, to the admission of evidence, and to the giving of certain instructions to the jury.
Judgment affirmed. All the Justices concur.