WARWICK *v.* OCEAN POND FISHING CLUB; *et vice versa.*

Nos. 17010, 17029.   MARCH 13, 1950.   REHEARING DENIED MARCH 27, 1950.

*Copeland & Dukes*, for plaintiff in error.

*R. G. Dickerson* and *Langdale, Smith & Tillman*, contra.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) Two main questions upon which all exceptions must turn are: (1) Did the evidence relating to the establishment of the dividing line by acquiescence demand the verdict? and (2) was the cross-action of the defendant subject to objection and demurrer that it was not germane to the main action? These two questions will be decided in the order named.

"Acquiescence for seven years, by acts or declarations of

adjoining landowners, shall establish a dividing line." Code, § 85-1602. While the foregoing rule is applicable in processioning proceedings, it is likewise applicable in an action seeking to enjoin a trespass and to establish the dividing line. *Veal* v. *Barber*, 197 *Ga.* 555 (30 S. E. 2d, 252). But counsel for the opposing parties take sharp issue on whether or not the dividing line must be in dispute, uncertain, or unascertained in order that it might be established by acquiescence. Counsel for the defendant in error contend that there need be no dispute or uncertainty, and rely upon *Farr* v. *Woolfolk*, 118 *Ga.* 277 (45 S. E. 230), *Tietjen* v. *Dobson*, 170 *Ga.* 123 (152 S. E. 222), *Smith* v. *Lanier*, 199 *Ga.* 255 (34 S. E. 2d, 91), and *Yarbrough* v. *Stuckey*, 39 *Ga. App.* 265 (147 S. E. 160), to sustain that position. However, counsel for the plaintiff in error, taking the opposite position, rely upon *Bradley* v. *Shelton*, 189 *Ga.* 696 (7 S. E. 2d, 261), *Veal* v. *Barber*, supra; *Osteen* v. *Wynn*, 131 *Ga.* 209 (62 S. E. 37), *Gornto* v. *Wilson*, 141 *Ga.* 597 (81 S. E. 860), and *O'Neal* v. *Ward*, 148 *Ga.* 62 (95 S. E. 709).

Considering the cases, in the order above named, upon which counsel for the defendant in error rely, we find that in *Farr* v. *Woolfolk*, supra, the decision is concurred in by only five Justices. It did not involve acquiescence, but did involve an agreement between the parties as to the line, and the reversal by the court was upon a charge to the effect that, if the owners agreed upon a line and one party was in possession up to that line for a period of seven years, he would have title. This charge was held to be error upon the ground that possession for seven years was not essential for the establishment of the line by an agreement.

In *Tietjen* v. *Dobson*, supra, the attack upon the charge on acquiescence, which charge was in terms of the Code, was upon the ground that it failed to charge that it was necessary for each party to have actual possession of their respective sides of the line. The court simply held that the charge was not subject to the attack made. In *Smith* v. *Lanier*, supra, in which two Justices dissented from division (2) of the opinion, it is stated at page 263: that "we do not think that the rule with reference to acquiescence for seven years is applicable in this case, for the reason that the principal defendant relies upon a parol gift of land." And the case of *Yarbrough* v. *Stuckey*, supra, involved

an agreement between coterminous owners, the Court of Appeals holding that the evidence was sufficient to authorize the inference that such agreement was made. Under the law, this alone was sufficient to establish the dividing line, and acquiescence for seven years, as required by Code § 85-1602, was not involved. On the motion for rehearing that court, after discussing acquiescence, at page 267, said: "In other words, where coterminous owners enter into a parol agreement purporting to establish the line between their respective tracts, and the line as thus designated is acquiesced in for more than seven years by acts or declarations of the owners, such facts will raise a conclusive presumption . . of a valid agreement." Thus it would appear that none of the decisions relied upon has held that a dividing line between landowners, although clearly established and marked, may be re-established by acquiescence for seven years under Code § 85-1602.

On the other hand, the above decisions relied upon by counsel for the plaintiff in error hold that the line must be uncertain or in dispute in order that it might be established by acquiescence for seven years. That rule is in harmony with Code § 20-401 (4), which requires that contracts for the sale of lands or any interest in or concerning them must be in writing. It is also in harmony with Code § 29-101, which requires that deeds to land be in writing and signed by the maker. It was ruled in *Veal* v. *Barber,* supra, that the description in the respective deeds must be such as would include the land up to the established line. This is manifestly true for the reason that title could not pass by mere acquiescence.

Without exception the cases hold that, before the dividing line can be established by express agreement of the adjoining owners, it must be in dispute, uncertain, or unascertained. The fundamental basic principle upon which Code § 85-1602 rests is that acquiescence by acts or declarations for a period of seven years is conclusive evidence of an agreement of the adjoining owners. This was asserted in *Yarbrough* v. *Stuckey,* supra; and in *Farr* v. *Woolfolk,* supra, it was stated as follows: "Acquiescence for the period required by the statute would be conclusive evidence of a previous agreement, though there may in fact have been none; but an actual agreement in fact, whether in

writing or parol, takes the place of acquiescence and becomes binding from the time it is made." Sound logic compels the conclusion that the dividing line is in both instances established by proof that the adjoining owners agreed thereto, the agreement being expressed in one case and conclusively implied in the other, and therefore the requirement that the line be in dispute, uncertain, or unascertained is essential in both cases alike. If it is required when there is an express agreement, then it is even more necessary where an implied agreement is relied upon.

But, if by an insistence upon a strict limitation to the precise language of the Code, it is urged that no dispute or uncertainty as to the line is prerequisite to the establishment by acquiescence, the complete and decisive answer is that the Code refers to "establishing," and not "re-establishing" the dividing line. If the line be certain and ascertained, it is established already, and the rule for establishing it by acquiescence is inapplicable. In such a case with the line established and ascertained, it would be trifling with the law and with honesty between men to write a rule of law whereby the lands of one would be given to the other in open defiance of the plainly marked and established dividing line between them. Title by adverse possession will never ripen if possession is not in good faith. Neither law nor equity will grant relief to one coming into court with unclean hands. When the line is established and plain, one could never in good faith contend for a different line. The law will not thus aid in creating doubts as to men's rights where they are plainly and unmistakably fixed, and then destroy those rights by means of the doubts thus deliberately created.

Therefore we hold that the establishment of a dividing line by acquiescence is bottomed upon conclusive proof of an agreement, and stands upon the same basis as the establishment of such a line by express agreement, and that a prerequisite to either is that such a line be in dispute, uncertain, or unascertained.

This does not mean, however, that we can sustain the contention of counsel for the plaintiff in error that the dividing line here was certain and ascertained, since the deeds relied upon fix that line at one hundred feet from the high-water mark.

The line is definite in so far as the words of the deed are concerned; but it had never, with the use of the deed as a guide, been located and marked upon the land itself. Despite the clarity of the deed, it remained necessary to ascertain, by measurement, the location upon the land of the dividing line, and hence it must be held that the line was uncertain and unascertained, in contemplation of the rule for the establishment of a line by acquiescence. The one-hundred-foot distance of the line from the high-water mark as called for in the deed was not enough to establish that line. *Zachery* v. *Hudson*, 138 *Ga.* 85 (74 S. E. 768).

But counsel insist that, even if all other requisites for the establishment of the line contended for by the petitioner were present, a fatal deficiency was the lack of proof of acquiescence of the adjoining owners by acts or declarations for a period of seven years. We look to the evidence for an answer to this question.

J. A. Garrison testified that he was employed by the petitioner from 1926 to 1945 as caretaker of its premises; that his duties were to see after everything around petitioner's property, and that no one got in or out that did not belong to the Club; that in 1928 he assisted Cy Bacon, the county surveyor, in establishing the line found by the jury to be the dividing line; and that the petitioner, desiring to establish the line, got the surveyor to come and establish it. He further testified that he and the surveyor measured off a distance of one hundred feet from the water, and marked the line at that point around the lake by putting three hacks on certain trees, the surveyor showing him what trees to blaze. He testified that, while acting as a caretaker for the petitioner with a duty to keep all except members off the land, he told Dr. Hardman, who then owned the land now held by the defendant below, that they had established the line; and that he went over the line with Dr. Hardman, who said, "I am satisfied." This same witness went on to say that he went over the line with Tom Pitts, the Superintendent of the Orphans' Home, to whom Dr. Hardman conveyed his land, and pointed out the line as marked by the witness and the county surveyor; that he also went over the line later with Dick Stevens and Eddie Zant about two years before the trial, and Mr. Stevens

reblazed some of the trees along the line; and that they all represented the petitioner.

Harley Langdale Jr. testified that, as a member of the petitioner Club, he and Winston McKey, a former owner of the land of the defendant in the chain of title from Dr. Hardman, walked along the line and Mr. McKey pointed out the line. Mr. McKey testified: "The best I can recollect is that my property line is 400 feet, 400 yards from the high-water mark." There was also evidence that the petitioner later hired a registered surveyor to make a plat or map of the premises, showing the line found by the jury; and that the plat was duly recorded in the office of the clerk of the superior court of that county. The evidence also showed that Dr. Hardman and his successors in title cut timber up to but not across the line, and worked the trees for turpentine up to but not across the line.

Counsel for the plaintiff in error, in the oral argument, conceded that perhaps there was sufficient acquiescence by acts or declarations on the part of Dr. Hardman and his successors in title; but contended that there were insufficient acts and declarations on the part of the petitioner. The line was, according to the undisputed evidence, located and marked by the surveyor who was engaged by and who acted for the petitioner. Garrison, as caretaker with the duty of keeping off trespassers, repeatedly went over the line thus marked. His acts, being within the scope of his employment, were the acts of the petitioner. The evidence, therefore, was not only sufficient to prove acquiescence for seven years by acts or declarations, but, since it was uncontradicted, it demanded the verdict of the jury in favor of the line thus established by acquiescence. And, since it is admitted in the answer that the defendant was committing the trespass alleged and sought to be enjoined, the verdict in favor of the petitioner was demanded. See *Brown* v. *Hester*, 169 *Ga.* 410 (150 S. E. 556); *Sikes* v. *Mutual Benefit Life Ins. Co.*, 182 *Ga.* 858 (187 S. E. 61). In view of this ruling, it becomes unnecessary to rule on any of the special grounds complaining of the charge and the failure to charge, except as to grounds three and fourteen, relating to the defendant's cross-action, which will be ruled upon in division (2) of this opinion.

■ Ordinarily, when there is an affirmance on the main bill of

exceptions, the cross-bill will be dismissed. The peculiar circumstance of this record makes it inadvisable to dismiss the cross-bill here. The question presented by the cross-bill is whether or not the objection and demurrer to the defendant's amendment, setting up her cross-action for damages should have been sustained. Special grounds three and fourteen complain of the charge relating to the defendant's claim for damages. The cross-action was in two counts, the first alleging injury to pasture privileges by the unwarranted flooding of the pond of the petitioner, and the second alleging damages because the plaintiff breached its said warranty for pasture rights upon the lands aforesaid by carelessly and negligently causing the flooded condition. The amendment was objected to, because (1) it was not germane, and (2) it joined an action ex delicto with an action ex contractu. However, the defendant later amended the cross-action by striking the second count alleging the action ex contractu. The petitioner's cause of action was to enjoin an alleged trespass and to establish a dividing line. The defendant's claim for damages, based upon a trespass in an entirely different matter, was not germane and should have been disallowed. *Brownlee* v. *Warmack,* 90 *Ga.* 775 (17 S. E. 102) ; *Atlanta Northern Ry. Co.* v. *Harris,* 147 *Ga.* 214 (93 S. E. 210). The court erred in allowing the amendment over the objection. All subsequent proceedings on the amendment were therefore nugatory, and grounds three and fourteen of the amended motion for new trial need not be ruled upon.

*Judgment affirmed on the main-bill of exceptions, and reversed on the cross-bill. All the Justices concur.*