## 20062.  SEABOARD AIR LINE RAILROAD COMPANY v.
## TAYLOR et al.

HAWKINS, Justice.  Mrs. R. T. Taylor, Sr., and her son R. T. Taylor, Jr., filed a suit in trespass against Seaboard Air Line Railroad Company, in Stewart Superior Court, December 20, 1956, alleging that the plaintiffs are the owners and in possession of certain land described as being the south half of Lot No. 124 in the 24th Land District of Stewart County, Georgia, containing 101¼ acres, more or less, which allegation was amended on July 15, 1957, to show that said tract of land was purchased by Mrs. R. T. Taylor, Sr., from Virginia Richardson on November 17, 1938, the deed of conveyance being recorded in Deed Book 25, page 200, Stewart County, Georgia, on November 18, 1938, and describing the land as follows: "All that tract or parcel of land lying and being in the 24th Land District of Stewart County, Georgia, containing 90 acres, more or less, and being the home place of Virginia Richardson, where the said Virginia Richardson now lives, and bounded as follows: On the north by lands of Mrs. Lawrence Tatum, on the east by lands of and occupied by Mrs. Bob Joines and the Georgia, Florida and Alabama Railroad; on the south by lands of M. G. Richardson, and on the west by the public paved highway leading from Columbus through Richland to Albany.  The purchaser buys this property as it now stands and with the boundaries as now established and fixed."  The petition further alleged that the defendant has a railroad track running along the plaintiffs' said tract of land, within 15 to 25 feet of the east boundary, and is in the process of installing additional track or tracks along the path occupied by the aforementioned track; that on December 20, 1956, the defendant, by and through its agents, servants, and employees, entered upon the aforementioned property of the plaintiffs and began excavation work and filling-in work and is now in the act of trespassing on the said property of the plaintiffs; that said trespass is working irreparable harm and damage to the plaintiffs' lands; that the plaintiffs have advised the defendant and its agents, servants, representatives and employees that the property they are now trespassing on is the property of the plaintiffs; that prior to said trespasses the defendant, through its agents and representatives did attempt to purchase said lands from the plaintiffs and they did

enter upon an oral agreement whereby the defendant was to purchase said lands; but that, at the last minute, the defendant refused to comply with its oral agreement to purchase and has since utterly disregarded the rights of the plaintiffs, and has come upon said lands of the plaintiffs; that the plaintiffs have valuable timber growing on said lands and valuable fences erected thereon, and that the defendant is causing said fences to be covered with dirt and said trees to be pushed over, cut, removed and destroyed, all of which damages are irreparable and permanent in nature; that the trespasses alleged are in the nature of continuing trespasses in that the defendant prosposes to lay a railroad track and right-of-way over, upon and across this property of the plaintiffs, same to be laid permanently; that in order to avoid a multiplicity of suits, the plaintiffs bring this action for restraint and injunction against the defendant; that the actual lands of the plaintiffs now being trespassed on constitute a strip of land varying in width from 14 to 25 feet running north and south across the east end of the south half of Lot of Land No. 124 in the 24th Land District of Stewart County, Georgia, said south half of Lot 124 being the lands now owned by the plaintiffs; that said strip measures approximately 25 feet wide by 1490 feet in length, running north and south and parallel to the railroad track running adjacent to the east lot line of said Lot 124 in the 24th Land District of Stewart County, Georgia.

The prayers of the petition were for process, a rule nisi, a temporary and permanent injunction restraining the defendant from committing the alleged acts of trespass, for damages, and general relief.

On December 20, 1956, the trial judge temporarily restrained the defendant from trespassing or entering upon the land described in the plaintiffs' petition, from breaking down fences on said property, or cutting and removing or otherwise injuring trees and timber thereon.

On December 26, 1956, the defendant filed an answer, admitting: jurisdiction of the court; that it was constructing a railroad track in Stewart County, Georgia, in order to relieve automotive congestion in the City of Richland, Georgia, and to expedite the flow of its freight trains; that it already has a railroad track running through said county; but it denied that its track is as close to the plaintiffs' property as alleged by them; denied that it had trespassed on the plaintiffs' property;

denied that it had harmed the plaintiffs' property in any manner whatsoever. Further answering, the defendant admitted that its agent had discussed with the plaintiff, R. T. Taylor, Jr., the plaintiffs' contention that the defendant was encroaching upon the plaintiffs' property, but the defendant contended in its answer that the property line is not where the plaintiffs contend it to be, and that the defendant was in good faith constructing its additional railroad track upon property which the defendant bona fide believes belonged to the defendant railroad, and that the plaintiffs were not entitled to an injunction. The defendant denied that it entered into any oral agreement to purchase property from the plaintiffs and said further that it merely negotiated with them for a settlement of the difference in the contentions of the plaintiffs and defendant with respect to the location of the property line between them, and by negotiating with the plaintiffs was simply trying to avoid litigation between the parties. The defendant prayed that "said injunction be dissolved and that defendant be allowed to continue with the construction of its track, or in lieu thereof plaintiffs be required to post a bond in a sufficient sum to compensate defendant for its damages by virtue of the delay caused by plaintiffs."

A hearing on the temporary features of the case was held on February 5, 1957, and an order was passed by the court on May 18, 1957, setting forth that at the hearing both sides presented evidence on the dispute, and it appeared to the court that the status quo should be maintained until the convening of the July term of Stewart Superior Court, and by agreement of counsel for both parties, the court ordered that the temporary restraining order originally granted at the time of the filing of the petition be continued in effect until further disposition at the July term of court.

The case came on for trial July 15, 1957. Each side called four witnesses. The evidence of the defendant, including a plat, a will, and three deeds which were put in evidence, established that the plaintiffs were claiming title to a part of Land Lot 124 in the 24th District of Stewart County, Georgia; whereas a deed tendered in evidence by the defendant and admitted by the court, shows that the defendant railroad was claiming title to a part of Land Lot 133 in the 24th District of Stewart County, Georgia. These are adjoining land lots, the railroad being located on the west side of Land Lot 133, adjoining the

east side of Land Lot 124. The trespass issue thus being the location of the land lot line between these two land lots. On the conclusion of the trial, the jury returned the following verdict: "We, the jury, find in favor of the plaintiff, and establish land line on the east side of Lot 124, belonging to Mrs. R. T. Taylor, Sr., 25 feet from the center of the railroad track, and damages $470, and also permanent injunction."

The case is before this court on exceptions which complain of the denial of the motion for a new trial and the denial of the motion for a judgment notwithstanding the verdict. The motion for a new trial as amended contains 14 grounds, Nos. 1, 2, and 3 being the general grounds. *Held:*

1. Ground 4 of the amended motion for a new trial complains that the jury erred in returning a verdict awarding the plaintiffs damages in amount of $470, for the reasons that there was no evidence presented at the trial of the case of bad faith on the part of the defendant, and there was no amount of damages alleged or proved. While the testimony of R. T. Taylor, Jr., clearly indicates there was actual damage, in that the railroad moved over from approximately 25 feet they had, to approximately 40 feet, and cut dirt or either filled dirt in on the land, no monetary amount of damage was alleged or proved. Counsel for the defendants in error, in his brief says: "If the court rules the damages are not properly pleaded and proved the plaintiffs ask permission to write the entire amount off in order to cure such error and the plaintiff does hereby write off said entire amount." Permission is so granted, and direction given to the trial court to amend the judgment to eliminate the sum of $470 awarded as damages.

2. Ground 5 complains that the jury erred in returning a verdict for the plaintiffs which established the location of the land lot line between the property of the plaintiffs and that of the defendant 25 feet from the center of the railroad track, for the reason that the evidence introduced during the trial of the case relative to the location of said line was to the effect that it was a straight line 27 feet from the center of the railroad track at the south end of the Taylor property and approximately 22 feet from the center of the railroad track at the north end of the Taylor property. While the County Surveyor of Webster County, Georgia, testified, and the plat introduced in evidence shows, that the southeast corner of the Taylor property in Land Lot 124 of the 24th District of

Stewart County, Georgia, is 27 feet from the center of the main line of the railroad, and the northeast corner 20 feet and 9 inches from the center of the main line, there was other evidence from which the jury could conclude that the plaintiffs were not claiming any land within 25 feet of the center of the railroad track, and that their property had been cultivated to within that distance of the track as far back as 1931. Accordingly, this ground is without merit.

3. Ground 6 complains that the court erred in admitting in evidence the warranty deed from Virginia Richardson to the plaintiff Mrs. Taylor, Sr., under which she claimed title, over the objection that it did not establish any dividing line, and the plaintiffs had not tied in the identification of the deed with the property claimed in the proceeding. This deed was set out in the petition and is the basis for the plaintiffs' action, and, therefore, this ground is wholly without merit.

4. Ground 7 complains that the court erred in admitting, over objection, certain testimony of R. T. Taylor, Jr., with respect to being approached within a period of three months prior to the institution of this suit, by a Mr. Russell, who represented himself to be a purchasing agent for the railroad, with a view of purchasing a strip of the Taylor land 25 feet by 1490 feet, and in which conversation, according to the testimony of Taylor, Russell told him that the railroad had 25 feet of right-of-way and wanted 50 feet for the purpose of putting in some additional track. This evidence was objected to as being prejudicial and in the nature of an admission or proposition made with a view to compromise and that therefore it was not proper evidence. The record shows that this same Mr. Russell was present in court and testified in rebuttal as a witness for the defendant, in which testimony he swore that he was assistant real-estate agent for the Seaboard Railroad and had some dealings the latter part of the previous year with reference to acquisition of certain rights-of-way south of Richland in Stewart County, Georgia. He also went into detail with respect to his conversation with Mr. Taylor. While the testimony of these two witnesses is in sharp conflict, that was a question for the jury, and under the circumstances, the rule of law that statements by a property owner against his interest as to the location of a line in dispute are admissible in evidence, is applicable in this case.

*Farrar* v. *Gulf Oil Corp.*, 208 *Ga.* 212 (5) (66 S. E. 2d 55);
Code § 38-403. This ground is, therefore, without merit.

5. Since the deeds of the parties (the plaintiffs' calling for land
in Land Lot 124, and the defendant's calling for land in ad-
joining Land Lot 133) did not show any overlapping of
description as to title, and the fixing of the dividing line as
claimed by the plaintiffs necessarily determined that the de-
fendant never had color of title to the portion of the land in
dispute, because the western boundary of the defendant's
land was identical with the eastern boundary of the plaintiff's
land, the court did not err in failing to charge the law as to
prescription by color of title and seven years' adverse pos-
session, as complained of in Ground 8 of the amended motion
for a new trial. *Crawford* v. *Cook*, 204 *Ga.* 654 (3) (51 S.
E. 2d 422).

6. Ground 9 complains because the court refused to give a writ-
ten request to charge defining possession which might be the
foundation for prescription. Since we have held in the pre-
ceding division of this opinion that title by prescription was
not involved, the trial court did not err in refusing to give this
charge. See *Price* v. *Moore*, 150 *Ga.* 713 (1) (105 S. E. 302).

7. Ground 10 complains of that part of the charge of the court
concerning bad faith and wilful trespass on the part of the
railroad, and special damages for bad faith, on the ground
that there was no evidence introduced to sustain the conten-
tion of the plaintiffs that the defendant was guilty of bad
faith in that the trespass was wanton or wilful, and tended to
put in the minds of the jury the idea that the plaintiffs could
be awarded damages for the alleged trespass of the defendant
railroad on the lands claimed by the plaintiffs. Since direc-
tion has been given in division 1 of this opinion that the
damages awarded the plaintiffs be written off, the charge
complained of, even if erroneous, has been rendered harmless.

8. Ground 11 complains that the court erred in giving the fol-
lowing charge: "Now if you can determine by a preponderance
of the evidence just where that dividing line is you should
find in favor of that dividing line unless you can also find
from the evidence or that you do find from the evidence that
that line was *unascertained and uncertain and in dispute* and
that another line, some other line has been established by
acquiescence or by prescription. When a line is *disputed and
unascertained and uncertain* as to where the line is between

the parties, why then that line might be established by acquiescence for seven years by acts or declaration of the adjoining owners." Counsel contend that the law regarding acquiescence in a dividing line is clear to the effect that before the dividing line can be established by acquiescence, the dividing line must be in dispute, uncertain, *or* unascertained, and that when the court used the conjunction *"and"* between the required conditions on which acquiescence can commence gives the erroneous impression that it is necessary that such a dividing line meet all three of the conditions rather than merely one or two of them. The only case cited by counsel for the plaintiff in error in support of this contention is *Warwick* v. *Ocean Pond Fishing Club*, 206 *Ga.* 680 (58 S. E. 2d 383), and that case does not support their argument. A careful reading of that opinion, which cites and discusses many other cases dealing with the words in question, refers to them in the following order: "uncertain or in dispute," "in dispute, uncertain, or unascertained," "dispute or uncertainty." That case was not dealing with a charge of court, but is a sound, well considered opinion on the points dealt with. The words "unascertained" and "uncertain" mean substantially the same thing, whether used conjunctively or disjunctively. As an illustration, in *Callaway* v. *Armour*, 207 *Ga.* 229, 232 (60 S. E. 2d 367), which is another full-bench decision, the words were used in this order: "unascertained, uncertain, or disputed," and "uncertain and unascertained." The fact that a line might be uncertain or unascertained, or uncertain and unascertained, would make little difference unless there was a dispute. Adjoining landowners might go along for years without knowing the exact location of their dividing line, and unless or until there is a dispute there would be no reason for establishing a line by acquiescence. Code § 85-1602 simply says "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." After a careful reading of the charge as a whole, we hold that the trial judge covered this phase of the case properly, and therefore this ground of the motion for a new trial is without merit.

9. Ground 12 complains that the court erred in giving the following charge: "On the subject of acquiescence it is essential that you must believe that there was a disputed or unascertained line and that some other line has been set up and

acquiesced in in this case by the plaintiffs in the case by some act or declaration on their part for a period of seven years. The mere fact that the defendant might have occupied in some way the lands up to the fence, I mean done certain acts on it for a period of seven years or more, would not establish that title, I mean that line." Counsel contend that the court erred in using the two words "set up", for the reason that the charge indicates that, for a line to be established as a dividing line by acquiescence, it was necessary for the plaintiffs to set it up as a dividing line, whereas the law merely contemplates that both parties must acquiesce in a certain line for it to become a dividing line under the law of acquiescence. In *Warwick* v. *Ocean Pond Fishing Club*, 206 *Ga.* 680, 684, supra, it was said: "Therefore we hold that the establishment of a dividing line by acquiescence is bottomed upon conclusive proof of an agreement, and stands upon the same basis as the establishment of such a line by express agreement, and that a prerequisite to either is that such a line be in dispute, uncertain, or unascertained." In order to have "conclusive proof of an agreement," or an "express agreement," with respect to a dividing line, it certainly would have to be "set up" or marked. Therefore, there is no merit in this ground of the motion for a new trial.

10. Ground 13 complains that the trial judge charged the jury on the question of title by prescription, which is obtained by twenty years' adverse possession, thereby confusing the jury, since there was no evidence of adverse possession for twenty years as required under the law. While the trial judge did say, "To establish a line by prescription would require twenty years, occupation up to a given line in good faith. It would require twenty years," immediately following these words, he specifically charged the jury, "Well, that question is not in this case." Accordingly there is no merit in this ground of the motion for a new trial.

11. Ground 14 complains of the admission of certain testimony by one of the plaintiffs, R. T. Taylor, Jr., to the effect that he knew that his father did not put up the fence on the Taylor property as a land line, for the reasons that it was not shown by the evidence that the witness knew what were the intentions of his father when he placed the fence where he did, and the testimony of the witness was such as to lead the jury to conclude, if they believed the witness, that the fence was

placed where it was for some other reason than as a land line, and the location of the land line referred to by the witness is a most vital point in the case. This ground of the motion for a new trial is without merit for the reason that this witness, who is acting as agent for his mother, the owner of the property, was present at the time his father, who was then acting in a similar capacity, gave instructions to the people who were actually erecting the fence, to get back far enough from the land lot line so that they would not have any trouble or conflict with the railroad, and that his father agreed where they put it was all right. This witness further testified "there were turn rows some 20 or 25 feet from the center of the railroad track," which were several feet east of where the fence was placed, showing that the land had been cultivated to the land lot line prior to the erection of the fence.

12. The motion for judgment notwithstanding the verdict sets out that at the close of all the evidence, the defendant moved the court to direct a verdict in its favor because, it is contended, the evidence demanded the finding as a matter of law that the Seaboard Air Line Railroad Company had acquired good title to the strip of land in dispute by virtue of a deed, which deed was written evidence of title, or what is also commonly known as "color of title," coupled with more than seven years' adverse possession, and that the evidence further demanded the finding that the fence line located approximately 42 feet west of the centerline of the track of the main line of the railroad had been established as a dividing line between the lands of the two parties by acquiescence for more than seven years by acts of both of the plaintiffs and their agents and by acts of the agents and servants of the defendant railroad, and that the court overruled the motion of the defendant for a directed verdict in its favor, after which the jury returned a verdict in favor of the plaintiffs. There was ample evidence to support the verdict, and the trial judge did not err in denying either grounds 1, 2, and 3, which are the general grounds of the motion for a new trial, or the motion for judgment notwithstanding the verdict.

*Judgment affirmed with direction. All the Justices concur.*

ARGUED MAY 12, 1958—DECIDED JUNE 4, 1958.

*Dykes, Dykes & Marshall, T. O. Marshall, Jr.,* for plaintiff in error.
*Carlton S. Brown,* contra.