A98A0227. GILLIS et al. v. BUCHHEIT et al.
(500 SE2d 38)

Judge Harold R. Banke.

E. R. Gillis and Luilene N. Gillis ("Gillis") sought a declaratory judgment and damages for trespass against adjacent property owners, Frank A. Buchheit and Barbara W. Buchheit ("Buchheit"). Gillis appeals the summary judgment awarded to Buchheit.

This case centers around a boundary line dispute between con-

tiguous property owners.[1] E. R. Gillis testified that in 1955, shortly before he agreed to the purchase of certain lots, he and George Clarke, Sr. agreed to establish a boundary line marked by blazing marks on a black gum and live oak tree and by setting three iron pipes and two concrete markers along the line. (Hereinafter, the "1955 line.") In 1956, Gillis bought lots 10, 10A, 11 and 11A from George S. Clarke and George S. Clarke, Jr.[2] According to Gillis, at the time of the sale, Clarke, Sr. agreed to change the angle of the boundary line from 76 degrees to 86 degrees. The Clarkes continued to own the adjoining property. During the seven-year period after his purchase, in the current disputed area, Gillis filled in some marsh land to form a peninsula out to a point on a creek. On one occasion, Clarke, Sr. complained that Gillis had damaged a cedar tree on his property and asked Gillis to stay five feet from the 1955 line when filling the property. Gillis testified that the U. S. Army Corps of Engineers regularly inspected his filling activities but prohibited new filling after 1968. Both before and after Clarke, Sr.'s death in 1964, Gillis continued to maintain the filled area. According to Gillis' undisputed testimony, Clarke, Jr. continued to recognize the 1955 line as the true boundary between their respective properties.[3] Gillis testified that from 1956 to 1972, Clarke, Jr. never interfered with, objected to, or complained of his filling activities.

In 1972, when Buchheit purchased lots 12, 12A, 13, and 13A from Clarke, Jr., Buchheit did not attempt to find the boundary line between lots 11 and 11A and 12 and 12A. Nor did Buchheit hire a surveyor. Even after Buchheit bought the land, Gillis continued to maintain the filled area and from 1972 until 1995, Gillis stored heavy equipment on the filled area. During the next 23 years, Buchheit did not reside on the land but gradually constructed a boatlift and a dock in the disputed area. E. R. Gillis testified that he and his wife permitted Buchheit to build the boat dock in the disputed area and "invited Mr. and Mrs. Buchheit to use our property at their convenience." According to Luilene Gillis, "[w]e just felt like they knew that it was our property they were putting that [the boat dock] on." In 1995, when intending to construct a house, Buchheit hired a surveyor to locate the boundary line. Based on this survey, Buchheit erected a chain link fence on land claimed by Gillis. Citing the 1995 survey, the deed from Clarke Jr., and a 1944 recorded plat, Buchheit asserted entitlement to an area encompassing the 1955 line and including the portion of land Gillis had filled.

---

[1] Citing *Beauchamp v. Knight*, 261 Ga. 608, 610 (2) (409 SE2d 208) (1991), the Supreme Court transferred this case to this Court.

[2] E. R. Gillis gave his wife an undivided half-interest in the property in 1965.

[3] George S. Clarke, Jr. died in 1984.

The trial court rejected Gillis' alternate theories of recovery: (1) that the boundary line had been established by acquiescence and recognition or (2) that Gillis obtained the property as a valid parol gift of land. Gillis appeals that adverse determination. *Held*:

1. The trial court erred in finding as a matter of law that the boundary line at issue had not been established by acquiescence under OCGA § 44-4-6 or by agreement. By law, "[a]cquiescence for seven years by acts or declarations of adjoining landowners shall establish a dividing line." OCGA § 44-4-6. Where a boundary line is disputed, uncertain, or unascertained, it may be established (1) by acquiescence for seven years pursuant to OCGA § 44-4-6, or (2) by agreement if the agreement is accompanied by actual possession of the line. *Cothran v. Burk*, 234 Ga. 460, 461 (216 SE2d 319) (1975). However, in order to establish a boundary line under this Code section, the line must not be known or certain. *Horn v. Preston*, 217 Ga. 165, 167-168 (2) (121 SE2d 775) (1961). " 'A line is uncertain or unascertained if its location on the ground is unknown even where the line is clearly described in the deeds [cit.], and even where the line is an original land lot line. [Cit.]' " *Cothran*, 234 Ga. at 461-462.

Here, E. R. Gillis testified without contradiction, that when he purchased the land from the Clarkes, it was mutually understood that the boundary line would be the 1955 line that he and Clarke, Sr. had marked and blazed a few months earlier. See *Warwick v. Ocean Pond Fishing Club*, 206 Ga. 680, 683 (58 SE2d 383) (1950). According to Gillis, both he and the Clarkes honored this line for more than seven years. *Tietjen v. Dobson*, 170 Ga. 123, 126-127 (3) (152 SE 222) (1930) (an oral agreement establishing a boundary line may be duly executed by acts or declarations such as by marking the line with monuments or blazes where the adjoining landowners consent).

Notwithstanding Buchheit's contention to the contrary, whether the 1944 recorded plat established the boundary line is a disputed issue. Gillis' expert, a registered land surveyor, testified that after reviewing the 1944 survey, it was his professional opinion that the plat did not indicate that the original survey ever set out any markers along the side lot lines or rear corners. In any event, even if the 1944 subdivision plat had specified the boundary line, such description would not be dispositive, if a subsequent line had been established by acquiescence or agreement. *Warwick*, 206 Ga. at 683. See *Greenway v. Griffith*, 225 Ga. 632, 636 (4) (170 SE2d 423) (1969). For these reasons, summary judgment must be reversed.

2. The trial court erred in finding as a matter of law that no material issue remained to be tried on whether Gillis held title based on a valid parol gift of land under OCGA § 23-2-132. To have acquired title in this manner, Gillis would have to prove: (1) an oral gift of land, (2) his possession of the land, (3) meritorious considera-

tion, and (4) valuable improvements to the land made by him in reliance on that gift. *Smith v. Lanier*, 199 Ga. 255, 264 (34 SE2d 91) (1945).

Here, Gillis testified that Clarke, Sr. promised him when he bought the property that it included the land up to the 1955 line. Gillis then took possession of and filled in the marshy area on his side of the 1955 line to create a peninsula out to a creek. The third element of "meritorious consideration" does not necessitate "valuable consideration" or that the donor actually receive something. *Collins v. Gwinnett Bank &c. Co.*, 149 Ga. App. 658 (255 SE2d 122) (1979). Instead, Gillis' asserted detrimental reliance may constitute sufficient consideration. *Mankin v. Bryant*, 206 Ga. 120, 143 (6) (56 SE2d 447) (1949). As to the fourth element, in reliance on the 1955 line, Gillis claimed that he expended valuable time and labor to fill the marsh and to render the point accessible and useful. See *Davis v. Newton*, 215 Ga. 58, 60 (4) (108 SE2d 809) (1959) (slight improvements which create permanent and substantial improvement to land may constitute valuable improvements). In these circumstances, we believe that a jury must also resolve whether Gillis' alternative theory of ownership is applicable. *Sharpton v. Givens*, 209 Ga. 868 (1) (76 SE2d 806) (1953).

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED MARCH 17, 1998 —
RECONSIDERATION DENIED APRIL 9, 1998 — 

*Donald E. Dyches, Jr.*, for appellants.
*Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney, Jr., Mary K. Hogan*, for appellees.