A98A2271. JAKOBSEN v. COLONIAL PIPELINE COMPANY et al.
(514 SE2d 851)

RUFFIN, Judge.

Todd Jakobsen sued both Colonial Pipeline Company and Plantation Pipeline Company for, inter alia, breach of contract, conversion, nuisance and trespass stemming from the defendants' use of

easements located on Jakobsen's property.[1] The trial court granted a directed verdict to defendants on all claims except the claim for trespass. The jury found that defendants had wilfully trespassed on Jakobsen's property and awarded "nominal" damages in the amount of $22,150 against each defendant and $60,000 in attorney fees against each defendant. Defendants filed a motion for judgment notwithstanding the verdict, and the trial court held a hearing on this motion. On May 29, 1997, the trial court granted defendants' motions for judgment n.o.v., and Jakobsen appeals. We affirm.

1.

When considering whether the trial court erred by granting motions for directed verdicts and motions for judgment n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict . . . ; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom[,] demands a certain verdict. Thus, a judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. If the evidence is conflicting, or if insufficient evidence exists to make a "one-way" verdict proper, judgment n.o.v. should not be granted. Further, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict.

(Punctuation omitted.) *Plane v. Uniforce MIS Svcs.*, 232 Ga. App. 757, 758 (503 SE2d 621) (1998).

The relevant facts are as follows:[2] Jakobsen lives in DeKalb County in a house he has owned since 1988. The lot is approximately 700 feet deep and 106 feet wide, and the house is set approximately 400 feet from the southern boundary. Remington Road forms the

---

[1] In his original complaint, filed in 1989, Jakobsen sought both damages and injunctive relief. The trial court issued an order regarding injunctive relief that was affirmed by the Supreme Court. See *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565 (397 SE2d 435) (1990).

[2] Some of the factual assertions made by the parties are not supported by citation to the record. Accordingly, in setting forth the relevant facts, we look only to the facts that have been properly cited and refuse to wade through the over 6,000 pages of the record for additional facts. We note that "it is not the function of an appellate court to cull the record in search of error on behalf of a party[,] and we decline to depart from this sage practice now." (Citation omitted.) *Sparti v. Joslin*, 230 Ga. App. 346, 347 (2) (496 SE2d 490) (1998); see also Court of Appeals Rule 27 (c) (2); *Hall County School Dist. v. C. Robert Beals & Assoc.*, 231 Ga. App. 492, 493 (498 SE2d 72) (1998); *Rolleston v. Cherry*, 226 Ga. App. 750, 753 (1) (b) (487 SE2d 354) (1997).

southern boundary of the property. When Jakobsen purchased his house, the property was subject to four, partially overlapping, pipeline easements belonging to Colonial and Plantation. These easements are located on the southern part of the property between Jakobsen's house and Remington Road. Plantation obtained two easements in 1941 and one easement in 1968, and Colonial obtained an easement in 1946. During the latter part of 1989, the defendants cut timber and vegetation from these easements in order to allow for aerial inspection.[3] Jakobsen claims the defendants trespassed to the extent that they cut or trimmed vegetation beyond the boundaries of their easements.

At trial, the parties disputed the exact boundaries of the easements. By the terms of the easements, the width of the easements was to be determined by reference to the center point of certain pipelines buried in the ground. Jakobsen contended the combined easements are 45 feet wide all the way across his property. Defendants, on the other hand, claimed the combined easements were larger on the eastern side of the property because one of the pipelines made a turn. According to the defendants, their technicians determined the boundaries of the easements by using a strip map and a "metrotarch locator" to find the approximate location of the pipeline. The technicians would then use a probe to make physical contact with the pipeline and to determine the pipeline's center. From the center of the pipe, the technicians would stake the right-of-way for the easement by measuring 15 feet in each direction from the center of the pipeline.

To support his contention that the defendants cut beyond the boundaries of the easements, Jakobsen relied, in part, on the testimony of William Goldberg, a plaintiff in another suit against the pipeline companies who had "visited [Jakobsen's] property several times from the first time that it was cut." Goldberg testified that shortly before trial, he had measured the boundaries of the easements and determined that the stakes marking the easement boundaries had moved by as much as two feet. However, Goldberg acknowledged that since he did not know where the pipes were buried, he had no way of knowing exactly where the easement boundaries were located. Goldberg testified that, based on his calculations, he found that the pipeline companies had over-cut by three feet on the north side of the easements.

Jakobsen, testifying on his own behalf, stated that in the previ-

---

[3] In *Jakobsen v. Colonial Pipeline*, supra, the Supreme Court upheld the pipeline companies' right to cut and trim trees on their easements noting that "[w]here an easement is granted without limitations on its use, the grantee is entitled to avail himself of other reasonable uses which develop over time if such uses significantly relate to the object for which the easement was granted." Id. at 566 (2).

ous six years, the defendants had returned to his property seven times to cut and trim the vegetation. According to Jakobsen, the area cut "moves northerly or southerly" from year to year. Specifically, Jakobsen testified that on the west side of his property, where the easement was 45 feet in width, the defendants cut 48 feet and that this "cutting would have been much closer to my house than what's indicated on this survey." Jakobsen's house lies north of the easement.

The jury returned a verdict in favor of Jakobsen, finding that defendants had wilfully trespassed on Jakobsen's property "from the southern property line to the southernmost line of the Colonial easement starting on October 19, 1989 through the present." Following this verdict, the trial court granted defendants' motion for judgment n.o.v., noting that the entire focus of the trial had been on possible trespass north of the easement. The trial court concluded that there was no evidence from which the jury could deduce that defendants had trespassed on the southern end of Jakobsen's property. The trial court noted that, at the hearing on the motions for judgment n.o.v., Jakobsen admitted that "none of the trees cut by the pipeline companies were located in the southern strip of land."[4] Because Jakobsen had failed to prove the underlying tort, the trial court struck the award of nominal damages and attorney fees.

"The standard[s] for directed verdict and judgment n.o.v. are identical." *Outdoor Systems v. Woodson*, 221 Ga. App. 901 (1) (473 SE2d 204) (1996). With respect to directed verdicts, we have held that

> an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. (Cit.) The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. . . . [W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

(Punctuation omitted.) *Constr. Lender v. Sutter*, 228 Ga. App. 405, 408 (1) (b) (491 SE2d 853) (1997); *Niles v. Bd. of Regents*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996). Likewise, when a jury renders

---

[4] Because Jakobsen did not file the transcript from the hearing on the motion for judgment n.o.v., we must assume that the transcript would support the trial court's finding regarding his admission. *Rowe v. Fleet Mtg. Corp.*, 226 Ga. App. 593, 595 (4) (487 SE2d 133) (1997).

a verdict that is not supported by the evidence, but is based solely on conjecture, it becomes the duty of the court to issue a judgment n.o.v.

In his appellate brief, Jakobsen cites no evidence supporting the jury's verdict that defendants trespassed south of the easement boundary. Although both Jakobsen's and Goldberg's testimony may have allowed jurors to infer that trespass occurred north of the easements, the jury clearly rejected this testimony, and there was no evidence to support the jurors' finding that trespass occurred between the southern boundary of the easement and the southern boundary of the property. Indeed, Jakobsen admitted at the hearing on the motions for judgment n.o.v. that none of the trees cut by defendants was located on the southern part of his land. Accordingly, the trial court correctly granted defendants' motion for judgment n.o.v.

2. Jakobsen also contends the trial court erred in prohibiting him from introducing expert testimony relating to whether and to what extent defendants' removal of trees was necessary for effective aerial inspection. In an order granting defendants' motion in limine, the trial court noted that the Supreme Court's order in *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565 (397 SE2d 435) (1990), "which constitutes the law of this case, clearly delineates that aerial inspections are an effective and necessary way for the Defendants to patrol and inspect their easements." Therefore, the trial court prohibited the introduction of evidence regarding aerial inspections without first obtaining the court's permission.

Pursuant to OCGA § 9-11-60 (h), "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." "An exception to the rule that will permit issues to be relitigated after appeal is when the evidentiary posture of the case changes." (Punctuation omitted.) *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629 (1) (493 SE2d 196) (1997). "There is no contention here that the evidentiary posture of this case has changed so as to fall within that exception to the law of the case rule." *Dicks v. Zurich American Ins. Co.*, 231 Ga. App. 448, 449 (499 SE2d 169) (1998).

In *Jakobsen*, the Supreme Court held that the defendants' easements implicitly included the authority to cut trees within the boundary of the easement and to side-trim trees adjacent to the easement for the purposes of aerially inspecting the pipelines. 260 Ga. at 566-567 (2). Although, as Jakobsen notes, the Supreme Court's opinion did not expressly state that the manner in which the defendants performed their aerial inspection was "requisite" to the enjoyment of the easement, the Supreme Court necessarily considered this issue in concluding that defendants had the authority to cut and trim. See *E. H. Crump Co. v. Millar*, 200 Ga. App. 598, 599 (409 SE2d 235)

(1991). Accordingly, the trial court properly precluded the relitigation of this issue. Id.

3. Jakobsen contends that the trial court erred by admitting the testimony of Sidney McKnight regarding the appraisal of damage to Jakobsen's property. At Jakobsen's request, the trial court issued an order in limine prohibiting the parties from referring to the amount of money Jakobsen received following a settlement with his title insurance company. The trial court also ordered that no party could refer to the appraisal of the trees made pursuant to this settlement. However, following the parties' opening statements, the trial court noted that Jakobsen's attorney "represented to the court that he was going to get into trees that had been handled by the . . . appraisal," at which point the trial court notified the parties that it would inform the jury that the trees already had been the subject of an appraisal process. In doing so, the trial court modified its earlier order on Jakobsen's motion in limine with respect to the appraisal.

> A motion in limine is a pretrial method of determining the admissibility of evidence, as a party may secure a pretrial ruling on the admissibility of evidence or a ruling prohibiting any reference to certain evidence until its admissibility can be assessed in the context of the trial as it unfolds. By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care."

(Citations and punctuation omitted.) *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4-5 (6) (505 SE2d 549) (1998).

Here, Jakobsen claims that the trial court erred in admitting evidence of the appraisal because the court had previously granted a motion in limine to exclude the evidence. However, "a trial court can modify a ruling on a motion in limine." *Helton v. State*, 217 Ga. App. 691, 692-693 (1) (c) (458 SE2d 872) (1995). Thus, Jakobsen's claim of error lacks merit.

Jakobsen also contends the trial court erred in admitting McKnight's testimony that "everything" had been considered during the appraisal process. According to Jakobsen, this testimony, combined with the charge that jurors were not to award compensatory damages for trees subject to the appraisal process, meant that jurors could not award any compensatory damages. However, at trial Jakobsen failed to object either to McKnight's testimony that he considered "everything" or to the jury charge. In addition, Jakobsen did

not object on these bases in his motion in limine. Accordingly, we will not address his claim of error on appeal. See *Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 590 (2) (497 SE2d 72) (1998) ("failure to make the specific objection at trial acted as a waiver of such grounds"); *Hayden v. Sigari*, 220 Ga. App. 6, 11 (6) (467 SE2d 590) (1996) (" '[a] party may not complain of the giving . . . of an instruction to the jury unless he objects to the instruction before the jury returns its verdict' ").

4. In his final enumeration of error, Jakobsen contends that the trial court erred in preventing his witness, Walter Robillard, from testifying. Robillard testified that he had a forestry degree and a law degree and had several years of experience as a registered surveyor. When Jakobsen's attorney asked Robillard if he had written any books or treatises, defendants objected to his testimony on the grounds that Jakobsen had not identified Robillard as an expert witness and it was "readily apparent that [Robillard would] be asked to give testimony as an expert." Jakobsen proffered that Robillard would testify regarding a survey that he had prepared of Jakobsen's property, which had not been provided to the defendants prior to trial. The trial court excluded Robillard's testimony because Jakobsen had given no notice of his intent to use Robillard as an expert witness and because Jakobsen had not given defendants a copy of the survey.

On appeal, Jakobsen does not contend that Robillard should have been allowed to give expert testimony, but argues that the trial court should have allowed Robillard to testify as a lay witness. However, based on the proffer by Jakobsen's attorney, it is clear Robillard was going to testify regarding his survey of Jakobsen's property. Georgia courts have consistently recognized surveyors as experts. See generally *Dept. of Transp. v. Edwards*, 267 Ga. 733, 738 (482 SE2d 260) (1997); *Cheek v. Wainwright*, 246 Ga. 171, 174 (3) (269 SE2d 443) (1980); *Gillis v. Buchheit*, 232 Ga. App. 126, 128 (1) (500 SE2d 38) (1998); *Davis v. Williams*, 165 Ga. App. 45, 46 (3) (299 SE2d 102) (1983). In his appellate brief, Jakobsen fails to mention any "lay testimony" that Robillard would have given, stating simply that Robillard would have "describe[d] conditions he observed on the property of Jakobsen." Therefore, Jakobsen has failed to show how he was harmed by the exclusion of such testimony. "An appellant must show harm as well as error to prevail on appeal." *Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992). Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Pope, P. J., concurs. Beasley, P. J., concurs in the judgment only.*

DECIDED MARCH 17, 1999 —
RECONSIDERATION DENIED APRIL 1, 1999 —

*Thomas R. Todd, Jr.*, for appellant.

*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Arnold & Hopkins, Ross Arnold, Gary L. Glancz, Edward T. Floyd*, for appellees.